**Certiorari Denied, No. 31,722, July 30, 2009**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2009-NMCA-085**

**Filing Date:   May 5, 2009**

**Docket No.    26,953**

**STATE OF NEW MEXICO,**

> **Plaintiff-Appellee,**

**v.**

**JESSE CLEMENTS,**

> **Defendant-Appellant.**


**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
**Charles C. Currier, District Judge**


Gary K. King, Attorney General
Andrea Sassa, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Joseph P. Walsh, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**ROBLES, Judge.**

**{1}**     Jesse Clements (Defendant) was arrested and charged with aggravated battery on a household member (a misdemeanor) and intimidation of a witness (a third-degree felony). He pled guilty to the misdemeanor and went to trial only on the intimidation of a witness

1

charge. He appeals his conviction of intimidation of a witness, contrary to NMSA 1978, Section 30-24-3(A)(2) (1997), and his sentencing under the sentence alteration and habitual offender statutes, NMSA 1978, Section 31-18-15.1 (1993) and NMSA 1978, Section 31-18-17(D) (2003). On appeal, Defendant raises three issues: (1) the evidence does not support a conviction under the intimidation of a witness statute; (2) the district court's alteration of Defendant's sentence was predicated on a statute that has been found unconstitutional by the New Mexico Supreme Court, making the sentence invalid; and (3) the district court erred in relying on a conviction from another jurisdiction during habitual offender sentencing. We affirm Defendant's conviction of intimidation of a witness and his sentence under the sentence alteration statute, and we reverse and remand Defendant's sentence under the habitual offender statute.

## I.      BACKGROUND

**{2}**      The facts are not disputed. In the mid-morning of November 2, 2005, Defendant was arrested following an altercation with his wife. During trial, his wife testified that an argument had started over a car key and, as Defendant got angrier, she knew "by the way he was acting, the tone of his voice, and from past [her] experience, [that she] was going to get hit." She attempted to make it to her car parked in front of the house, but Defendant caught up with her and took the keys out of her hand. As the two stood in the street, Defendant told her that he would kill her grandson if she left him.

**{3}**      Upon re-entering the house, Defendant began a physical assault. He grabbed her hair, threw her to the ground, and told her she was "no good" and that she had "mental problems." His wife testified that Defendant left the room for a moment, so she "took off through [the] back door" and ran. Defendant caught up with her outside. His wife testified: "[H]e just kept hitting me and hitting me." It was then that Defendant restrained his wife by the hair and bit her on the cheek, causing a laceration. After seeing the laceration, Defendant began panicking, declaring "I better not go to jail, I swear to God, oh God I'm going to jail. If I go to jail, Kathy, I swear to God I will fuckin' kill you, do you hear me?"

**{4}**      A police officer was dispatched to the house in response to a call from a neighbor. Defendant saw the police approach. Defendant then stated to his wife the following:

> God dammit, if he comes over here[,] I swear to God, Kathy, if I go to jail[,] I'll kill you. When I get out of prison[,] I will kill you. And if you say anything[,] I'll kill your kids. . . . I swear to God if I go back to prison, when I get out[,] I will fuckin' kill you. I will kill your kids. . . . You better say we were wrestling.

One of the responding police officers testified that, after her arrival and initial contact with Defendant, she separated the two, and Defendant began yelling at his wife to not say anything.

## II.      DISCUSSION

2

**A.     Intimidation**

**{5}**     Defendant appeals his conviction under Section 30-24-3(A)(2), arguing that the evidence presented at trial was insufficient to support a conviction under the statute.  After the State rested its case, Defendant moved for a directed verdict, which was denied.  After the jury returned a guilty verdict, Defendant moved to dismiss, and the district court held a hearing and considered supplemental briefing on the issue.

**{6}**     Section 30-24-3 states, in pertinent part:

> A.     Bribery or intimidation of a witness consists of any person knowingly:
>
> (2)     intimidating or threatening any witness or person likely to become a witness in any judicial . . . proceeding for the purpose of preventing such individual from testifying to any fact, to abstain from testifying or to testify falsely; or
>
> (3)     intimidating or threatening any person . . . with the intent to keep the person from truthfully reporting to a law enforcement officer or any agency of government that is responsible for enforcing criminal laws information relating to the commission or possible commission of a felony offense.

**{7}**     Defendant argues that the evidence was insufficient to convict him under subsection (A)(2) because, at the time he threatened his wife, no judicial proceeding was instituted.  Additionally, Defendant argues that ambiguity in Section 30-24-3 mandates reversal in light of the rule of lenity.

**{8}**     We note that "[t]he main goal of statutory construction is to give effect to the intent of the [L]egislature." *State v. Rowell*, 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995). "The words of a statute . . . should be given their ordinary meaning, absent clear and express legislative intention to the contrary." *Id.* (alteration in original) (internal quotation marks and citation omitted).  But a statute's "construction must not render the statute's application absurd, unreasonable, or unjust." *Id.* (internal quotation marks and citation omitted). "Interpretation of a statute is an issue of law, not a question of fact," which we review de novo. *Id.*; *State v. Duhon*, 2005-NMCA-120, ¶ 10, 138 N.M. 466, 122 P.3d 50.

**{9}**     Defendant contends that it was necessary to allege and prove that he engaged in intimidation in connection with an already-instituted, judicial proceeding in order for him to have been convicted under Section 30-24-3(A)(2).  Defendant argued to the district court that, since the Legislature in 1987 deleted the words "pending or about to be brought" after the word "proceeding" in Section 30-24-3(A)(2), the paragraph was restricted to only judicial proceedings in existence.  Defendant did not address why the words "pending or about to be brought" would have been removed if the Legislature had intended to so restrict the statute and, in fact, the district court noted that such an action may have been an attempt to broaden the statute.

3

**{10}**     Defendant relies on *State v. Bell* for the proposition that a formal proceeding must be in existence at the time intimidation takes place.  78 N.M. 317, 431 P.2d 50 (1967). However, *Bell* was decided under a different version of the statute and does not apply to this case.  Following the *Bell* decision, Section 30-24-3(A)(2) of the statute was amended and broadened to include victims who are "likely to become a witness in any judicial . . . proceeding."  § 30-24-3(A)(2).  In *State v. McGee*, interpreting the present version of the statute, this Court stated that "[i]ntimidation of a witness . . . requires a finding that the defendant's actions are committed for the purpose of preventing the victim from testifying, convincing the victim to testify, or convincing the victim to testify falsely, in the *future*." 2002-NMCA-090, ¶ 12, 132 N.M. 537, 51 P.3d 1191.

**{11}**     The statute in its ordinary meaning is a clear expression of the Legislature's intent. "When the language in a statute is clear and unambiguous, we give effect to that language and refrain from further statutory interpretation."  *Duhon*, 2005-NMCA-120, ¶ 10.  The specific use of the phrase "*likely* to become a witness in *any* judicial . . . proceeding" is clear and unambiguous on its face.  § 30-24-3(A)(2)  (emphasis added).  Consequently, we give effect to the present language.

**{12}**     Defendant also asserts that allowing a conviction in the instant case would circumvent the legislative intent in subsection (A)(3) (intimidation to prevent truthful reporting to a law enforcement officer).  In essence, Defendant argues that subsection (A)(3) was a new addition to Section 30-24-3 in 1991, implying that subsection (A)(2) did not and does not apply when a defendant intimidates a victim to prevent the reporting of a crime to law enforcement.  In response, the State argues that Defendant may have been prosecuted under either subsection (A)(2) or (A)(3).  The district court agreed that prosecution under subsection (A)(2) was appropriate when it denied Defendant's motion for a directed verdict and, again, when it denied Defendant's motion to dismiss a month after trial.  We agree with the district court.  The subsections are not entirely exclusive, but are fact-dependent.  The facts may support a charge under only one section or under both.  In this case, Defendant's wife testified that Defendant was aware and afraid that he may go to jail because of the assault.  She also stated that Defendant told her that he would kill her if she testified.  The conviction under subsection (A)(2) was appropriate under the facts of this case.

**{13}**     Defendant also argues that the rule of lenity mandates reversal of his conviction because Section 30-24-3 is ambiguous as applied, arguing that a statute is ambiguous when it can be understood by reasonably well-informed persons in two or more different senses. *State v. Elmquist*, 114 N.M. 551, 552, 844 P.2d 131, 132 (Ct. App. 1992).  Indeed, if a criminal statute is ambiguous, all "[d]oubts about the construction of criminal statutes are resolved in favor of the rule of lenity."  *State v. Keith*, 102 N.M. 462, 465, 697 P.2d 145, 148 (Ct. App. 1985).  However, in the immediate case, the plain language of the statute does not rise to the level of a reasonable doubt about the intentions of the Legislature, such that the doubt must be interpreted in favor of lenity.  *State v. Ogden*, 118 N.M. 234, 242, 880 P.2d 845, 853 (1994) ("The rule of lenity counsels that criminal statutes should be interpreted in the defendant's favor when insurmountable ambiguity persists regarding the intended scope of a criminal statute.")  However, "[a] criminal statute is not 'ambiguous' for purposes of lenity merely because it [is] *possible* to articulate a construction more narrow than that urged

4

by the Government." *Id.* (second alteration in original) (internal quotation marks and citation omitted). As stated above, Section 30-24-3(A)(2) is sufficiently clear, and we decline the invitation of an ambiguous interpretation.

**{14}** Finally, Defendant claims that his conviction must be reversed because it is not supported by sufficient evidence. Sufficient evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *State v. Baca*, 1997-NMSC-059, ¶ 14, 124 N.M. 333, 950 P.2d 776. "In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. When we review the evidence in this manner, we conclude that it is sufficient to support Defendant's conviction.

**{15}** Defendant's wife testified that she was intimidated and threatened by Defendant after he attacked her. She testified that he was attempting to prevent the possibility of jail in the future. She also testified that she was told by Defendant that he would kill her and her family if she testified; that she was hesitant to come to court for fear of her children's safety; and that the intimidation "worked" on her, even though she ultimately chose to testify anyway because she was "tired of him telling me what to do [and] tired of him threatening me." The evidence presented at trial was sufficient for a conviction.

## B. Sentence Alteration

**{16}** At Defendant's sentencing on July 17, 2006, the district court found that it was appropriate to alter Defendant's sentence by one-third, adding one year onto his three-year sentence under Section 31-18-15.1. Defendant appealed his conviction and, while his case was on appeal, our Supreme Court decided *State v. Frawley,* 2007-NMSC-057, 143 N.M. 7, 172 P.3d 144 (holding that sentence alteration, based upon a judge's finding, is facially unconstitutional). On May 28, 2008, Defendant filed his brief-in-chief, arguing for the first time that the sentence alteration was unconstitutional.

**{17}** In *Jackson v. State*, our Supreme Court held that

> where an appellate decision overrules prior law and announces a new principle, unless the decision specifically declares the ruling to be prospective only, the new rule is to be applied retroactively to cases *where the issue in question is properly preserved* at all stages of adjudication up to and including any direct appeal.

1996-NMSC-054, ¶ 5, 122 N.M. 433, 925 P.2d 1195 (internal quotation marks and citation omitted). In *Frawley*, our Supreme Court did specify that the new rule was to apply prospectively and not retroactively. 2007-NMSC-057, ¶ 38. Defendant argues that the new rule in *Frawley* should apply to him because his case was still on direct review when *Frawley* was decided. We disagree.

5

**{18}** In *Santillanes v. State*, our Supreme Court held that a prospective rule concerning interpretation of a child abuse statute would apply to "all cases which are now pending on direct review, *provided the issue was raised and preserved below*, and all cases presently pending but in which a verdict has not been reached." 115 N.M. 215, 225, 849 P.2d 358, 368 (1993) (emphasis added). In *State v. Gonzales*, we held that a proscription of a prosecutor's systematic use of peremptory challenges to eliminate persons from the jury on the basis of race applied to all cases then pending on direct review "*provided the issue was raised and preserved below*." 111 N.M. 590, 598, 808 P.2d 40, 48 (Ct. App. 1991) (emphasis added). In order to preserve an issue for appeal, "it is essential that the ground or grounds of the objection or motion be made with sufficient specificity to alert the mind of the trial court to the claimed error or errors, and that a ruling thereon then be invoked." *State v. Lopez*, 84 N.M. 805, 809, 508 P.2d 1292, 1296 (1973). Because Defendant raised this issue for the first time on appeal, we hold that the issue was not preserved.

**{19}** Of note, in its answer brief, the State volunteered "that the trial court did not make an appropriate record of findings pursuant to [NMSA 1978, Section 31-18-15.1 (1993)]," which requires a district court to "issue a brief statement of reasons for the alteration," and suggested that this Court remand to the district court to cure this failure. *Id.* However, the absence of a brief statement in the record was not argued by Defendant in his brief-in-chief and does not appear to be preserved in the record below. Defendant must make a timely objection that allows the district court the opportunity to address the issue. *See State v. Varela*, 1999-NMSC-045, ¶ 25, 128 N.M. 454, 993 P.2d 1280. This Court will not search the record to find whether an issue was preserved where Defendant does not refer this Court to appropriate transcript references. *See State v. Rojo*, 1999-NMSC-001, ¶ 44, 126 N.M. 438, 971 P.2d 829.

## C. Habitual Offender Sentencing

**{20}** Defendant appeals the use of one of two prior felonies used to enhance his sentence under Section 31-18-17(D), arguing that there was insufficient evidence to support a finding by the district court that Defendant was the same man named in one of the prior convictions. In December 2005, defense counsel was provided with certified copies of the Judgment and Sentence Reports (J&S), including the one in question, which was from a conviction in Wilbarger County, Texas in 1998. The J&S had no birth date, no social security number, no identifying information about the defendant, and stated only that the defendant's name was "Jesse Charles Clements," as opposed to "Jesse Clements," as Defendant is known in his other New Mexico convictions. The prosecutor stated that, when he received the packet from Texas, the J&S included a fingerprint card for Defendant. The fingerprint card was delivered to the Roswell Police Department where a fingerprint expert compared the card to Defendant's fingerprints and concluded that they were the same. The prosecutor further stated that the fingerprint expert was not in court to introduce the card or the report because Defendant had not provided notice to the State as required by Rule 5-509 NMRA (1989).

**{21}** Defendant objected to the findings of the fingerprint expert, who was not present in court. The prosecutor responded that the fingerprint expert would have testified that the

6

fingerprint card matched Defendant's fingerprints, and a subpoena for the fingerprint expert would have been issued had Defendant followed Rule 5-509(A), which provides:

> If the defense in an habitual criminal sentencing proceeding intends to attack the validity of any prior conviction, unless a shorter period of time is ordered by the court, no later than ten (10) days before the habitual criminal sentencing proceeding, the defendant shall provide the state with a written notice of such intention. The defendant's notice of intent to attack a prior conviction shall contain specific information as to each conviction the defendant intends to attack as invalid and the names and addresses of the witnesses by whom the defendant proposes to establish such defense.

**{22}** Sentence enhancement under Section 31-18-17(D) requires three elements to be shown: (1) the defendant is the same person, (2) the defendant has been convicted of the prior felony, and (3) less than ten years has passed since the defendant completed serving the sentence, probation, or parole. *State v. Simmons*, 2006-NMSC-044, ¶ 8, 140 N.M. 311, 142 P.3d 899. The State has the burden of showing the three elements to make a prima facie case. *State v. Smith*, 2000-NMSC-005, ¶ 10, 128 N.M. 588, 995 P.2d 1030. The burden of proof is by the preponderance of the evidence. *State v. Elliott*, 2001-NMCA-108, ¶ 35, 131 N.M. 390, 37 P.3d 107. When and if this burden has been met, it is then the defendant's burden to produce evidence that supports the assertion of invalidity. *Smith*, 2000-NMSC-005, ¶ 10. Once the defendant has presented the evidence, the burden shifts yet again to the State to demonstrate the validity of the prior convictions. *Id.* Apart from having copies of the J&S since December 2005, Defendant received a supplemental criminal information on May 15, 2006, alerting him of past felony convictions the State had identified. The district court found that the matching name and the lack of objection by Defendant before the sentencing hearing was sufficient to find the prior conviction "tentatively" useable under the statute, but allowed him ten days to object and raise "a problem with the fingerprints," which, in turn, would also allow the State to subpoena the fingerprint expert. The district court stated that Defendant had a minimal burden "at least to notify the State" of the intention to challenge a previous conviction. Defendant never requested a second hearing and appealed his sentence twenty-two days later.

**{23}** Defendant argues that the fingerprint card and the conclusions of the fingerprint expert's report, which were not in evidence, were improperly considered by the district court in the admission of the J&S. Further, requiring Defendant to refute what was not in evidence was an impermissible shifting of the burden. We agree. The State has the initial burden to prove past convictions. *See id.* Rule 5-509(A) does provide that the defendant has a duty to notify the State in the event the validity of a prior conviction is to be contested. The State still has the initial burden of showing that the defendant is, in fact, the same person as in the J&S.

**{24}** Rule 5-509(C) provides, in pertinent part:

> *If a defendant fails to serve a copy of such notice as herein required, the court may exclude evidence offered by such defendant* for the purpose of

7

proving a prior conviction was invalid, except the testimony of the defendant himself. If such notice is given by a defendant, the district court may exclude the testimony of any witness offered by the defendant for the purpose of proving the invalidity of a prior conviction if the name and address of such witness was known to defendant or his attorney but was not stated in such notice. *If the district attorney fails to file a list of witnesses and serve a copy thereof on the defendant as provided in this rule, the court may exclude evidence offered by the* [S]*tate to contradict the defendant's evidence*.

(Emphasis added.)

**{25}** To hold that Rule 5-509 applies to a defendant before the State has even met the initial burden of showing a prima facie case, as the State argues here, would be to say that failure by a defendant to give notice ten days before a sentencing hearing amounts to a waiver of any challenges, and an admission that all felonies listed in a supplemental criminal information have automatically met the prima facie showing. That is simply not the case. "[T]he State must make its prima facie showing, including all of the required elements for a prior felony conviction as defined by the habitual offender statute, and then the burden of proof shifts to the defendant." *Simmons*, 2006-NMSC-044, ¶ 13.

**{26}** We now turn to the J&S and examine whether it was sufficient by a preponderance of the evidence to establish that (1) Defendant was the same person as the person named in the J&S; (2) Defendant was, in fact, convicted of that prior felony; and (3) less than ten years had passed since Defendant completed serving his sentence, probation, or parole. *Id.*

**{27}** "In assessing a claim of evidentiary insufficiency, this Court asks whether substantial evidence supports the [trial] court's decision." *Elliott*, 2001-NMCA-108, ¶ 36. Substantial evidence is evidence that a reasonable person would consider adequate to support a defendant's guilt. *State v. Carrasco*, 1997-NMSC-047, ¶ 11, 124 N.M. 64, 946 P.2d 1075. In determining whether the evidence supports a criminal charge or an essential element thereof, the appellate court must view the evidence in a light most favorable to the State, resolving all conflicts therein and indulging all permissible inferences therefrom in favor of a verdict of conviction. *See State v. Apodaca*, 118 N.M. 762, 765-66, 887 P.2d 756, 759-60 (1994). "The reviewing court does not weigh the evidence or substitute its judgment for that of the fact finder as long as there is sufficient evidence to support the verdict." *Mora*, 1997-NMSC-060, ¶ 27.

**{28}** In *Simmons*, the defendant challenged the sufficiency of the third element—conviction within ten years—that the State was required to show for a prima facie case under Section 31-18-17(D). *Simmons*, 2006-NMSC-044, ¶¶ 5, 8. Our Supreme Court stated that review of the sufficiency of evidence is done with a substantial evidence standard and that, on review for substantial evidence, deference should be given to the findings of the district court. *Id.* ¶ 10. However, the district court may not use a prior conviction for sentencing if the State has not met its burden. *See id.* ¶ 15.

8

**{29}** We therefore conclude that the reliance on a three-page judgment that simply stated a name similar to Defendant's name and nothing else was unreasonable to support the first element under *Smith*. 2000-NMSC-005, ¶ 10. Without the fingerprint card or the conclusions of the fingerprint expert in evidence, the district court should have only considered whether the State had made a prima facie showing of the Texas conviction. The State did not make a prima facie showing, and the allowance by the district court of ten days for Defendant to object did not cure the initial deficiency. Accordingly, we reverse on this issue only.

## III. CONCLUSION

**{30}** We affirm Defendant's conviction of intimidation of a witness and his sentence under Section 31-18-15.1. We reverse and remand for entry of judgment and sentence consistent with this Opinion on the habitual offender issue.

**{31}** **IT IS SO ORDERED.**

_____
**ROBERT E. ROBLES, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**LINDA M. VANZI, Judge**

**Topic Index for *State v. Clements,* No. 26,953**

| **AE** | **APPEAL AND ERROR** |
|--------|----------------------|
| AE-RM | Remand |
| AE-SR | Standard of Review |

| **CA** | **CRIMINAL PROCEDURE** |
|--------|------------------------|
| CA-ES | Enhancement of Sentence |
| CA-HC | Habitual Criminal |
| CA-SN | Sentencing |

| **CL** | **CRIMINAL LAW** |
|--------|------------------|
| CL-WI | Witness Intimidation |
| CL-DO | Domestic Violence |