This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                                    **NO. 31,533**

**SUSAN J. WERKMEISTER,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
**Ralph D. Shamas, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Ralph E. Trujillo
Albuquerque, NM

for Appellee

Bennett J. Baur, Acting Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**VANZI, Judge.**

**{1}** Defendant was convicted of possession of a dangerous drug, driving while intoxicated (DWI), and possession of drug paraphernalia. She raises six issues on appeal, contending that: (1) the district court improperly excluded telephonic testimony and an affidavit from her doctor; (2) the State presented insufficient evidence to support her convictions; (3) the burden-shifting approach taken with respect to the offense of possession of a dangerous drug was unconstitutional; (4) a lab report was improperly admitted in violation of her right to confrontation; (5) she was denied a fair trial and due process as a consequence of various rulings by the district court; and (6) the State presented inadequate proof in support of the habitual offender sentence enhancement. For the reasons that follow, we affirm.

**BACKGROUND**

**{2}** At approximately 2:00 in the afternoon on November 7, 2009, Officer Joe Dan Green, a senior patrolman with the New Mexico State Police, was called out to mile marker 135 on U.S. Highway 285, roughly eighty miles south of Vaughn, to assist another officer with a possible DWI. At the scene, he observed Defendant's vehicle facing northbound on the southbound lanes, partially parked on the shoulder but with the passenger side tires on the traveled portion of the road. Defendant exhibited a variety of signs of impairment, and based on his training and experience, Officer Green believed that she was not entirely in control of her faculties. Defendant indicated that she was driving from Vaughn, but she could not explain how or why her

vehicle was facing northbound. Defendant denied drinking but stated that she had taken some prescription medication when she left Vaughn at about 1:00 that afternoon. Officer Green administered a number of field sobriety tests on which Defendant performed poorly. In light of his observations, Officer Green determined that Defendant was too impaired to drive.

{3}     Defendant was arrested, and in the course of the ensuing search of the vehicle, a number of small bottles containing medications were found. Officer Green testified that he identified them using a Physician's Desk Reference as Oxycodone, Cyclobenzaprine, Gabapentin, Lisinopril, and Naproxen. Officer Green explained that these are all "controlled substances" that cannot be obtained without a prescription. One of the bottles reflected that the Oxycodone had been prescribed to Defendant. The other bottles contained no labeling. Officer Green testified that nothing else was found to show that the other drugs had been prescribed to Defendant, and Defendant was unable to produce any other prescriptions.

{4}     Defendant consented to a blood draw, the results of which were set forth in a laboratory report. Dr. Hwang, a forensic toxicologist and the chief of the Toxicology Bureau of the Scientific Laboratory Division of the New Mexico Department of Health, explained that he had signed the report after having overseen the procedures utilized by staff to analyze Defendant's blood samples. The report was admitted without objection. Dr. Hwang then testified that five different drug compounds were

3

present, including amphetamine, methamphetamine, oxycodone, morphine, and alprazolam. He further explained that these are prescription drugs that would have a cumulative depressant effect on the central nervous system, causing sedation and disorientation, as well as distorted perception, poor coordination, and other effects, such as the various indicia of impairment observed by Officer Green.

{5}	After the State rested, Defendant moved for a directed verdict, arguing that the evidence was insufficient to establish that she had driven while impaired. The district court denied the motion.

{6}	Defendant subsequently presented evidence in her own defense. First, Defendant called William Schweder, who testified that he had taken Defendant to get her vehicle on November 9, 2009. He explained that Defendant's purse was inside the vehicle and that he had seen Defendant's prescriptions in her purse at that time. Next, Defendant testified in her own defense. She explained that she had prescriptions for a number of different medications, and she presented bottles and a copy of a prescription (dated 9/3/2010) for Naproxen. She testified that she also had prescriptions for Lisinopril and Gabapentin, but she did not have those prescriptions with her on the day of trial. She additionally testified that her husband had prescriptions for Cyclobenzaprine and Clonazepam and presented supporting documents.

{7} Prior to trial, Defendant had sought permission to present the telephonic testimony of her doctor. The district court denied the request. Relatedly, the court instructed Defendant to disclose medical evidence to the State and later recommended a video deposition of the doctor. Defendant made no such arrangements, and the prosecutor's independent efforts to obtain pertinent medical information and to secure an interview with Defendant's doctor were unsuccessful. When the doctor ultimately failed to appear at trial, Defendant sought to present an affidavit in which the doctor indicated that he had prescribed a variety of medications to Defendant. On the State's objection, the affidavit was excluded as inadmissible hearsay. No further witnesses were called, and the defense rested.

{8} The jury ultimately returned guilty verdicts on all counts. The State subsequently filed a supplemental criminal information, presented certified copies of judgments from Colorado, and sought a four-year sentence enhancement. Defendant challenged the sufficiency of the State's evidence to support the requested sentence enhancement. After conducting a hearing on the matter, the district court concluded that the documents were sufficient to meet the State's burden of proof.

{9} The district court postponed sentencing to allow newly-appointed counsel to review the trial record. Counsel subsequently moved for a judgment notwithstanding the verdict, arguing that the State had failed to prove that Defendant did not have a prescription, and to the extent that Defendant was required to prove that she had a

prescription, this was unconstitutional. The district court denied the motion. Defendant was then sentenced to four years imprisonment based upon her status as a habitual offender with the remainder of her sentence suspended. This appeal followed.

**DISCUSSION**

**Exclusion of Telephonic Testimony and Affidavit**

{10}    Defendant contends that the district court erred in excluding her doctor's affidavit and denying her request to present his testimony telephonically.

**1.    Affidavit**

{11}    In the affidavit, Defendant's doctor stated that he had prescribed Defendant medications including Naproxen, Lisinopril, Gabapentin, and Cyclobenzaprine "at various dates prior to November 7, 2009." The doctor also stated that he had personal knowledge that Defendant's husband had been prescribed Clonazepam by other doctors in the past and that Defendant sometimes picked up her husband's medications.

{12}    The district court excluded the affidavit on the ground that it constituted inadmissible hearsay. Insofar as the affidavit constitutes an out-of-court statement offered as proof of the matter asserted, this was an appropriate determination. *See* Rule 11-801(C) NMRA (defining hearsay as an out-of-court statement that is later offered in evidence to prove the truth of the matter asserted); Rule 11-802 NMRA

6

(providing that hearsay is inadmissible unless a valid exception applies). Nevertheless, Defendant contends that the affidavit should have been admitted under the catch-all or residual exception for statements not specifically covered by any of the other hearsay exceptions but with equivalent circumstantial guarantees of trustworthiness. *See* Rule 11-807(1) NMRA.

{13} We note that Defendant did not specifically argue below that the affidavit should be admitted pursuant to the catch-all exception. Nevertheless, because the district court does not appear to have been disposed to entertain arguments on the subject, we will proceed to address the merits. We review for abuse of discretion only. *See State v. Lopez*, 2011-NMSC-035, ¶ 4, 150 N.M. 179, 258 P.3d 458 ("We review the admission of evidence pursuant to an exception or an exclusion to the hearsay rule under an abuse of discretion standard.").

{14} The catch-all exception may apply if a hearsay statement: (1) has particular guarantees of trustworthiness; (2) is offered as a material fact; (3) is more probative than other evidence for the point offered; and (4) serves the purposes of these rules and the interests of justice, and is not covered by another exception. *See* Rule 11-807(A). "This exception is to be used sparingly, however, especially in criminal cases." *State v. Leyba*, 2012-NMSC-037, ¶ 20, 289 P.3d 1215.

{15} Defendant contends that insofar as the affidavit is duly sworn and notarized, it has particularized guarantees of trustworthiness. Defendant cites no authority in

7

support of this proposition. *See In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) ("We assume where arguments in briefs are unsupported by cited authority [that] counsel . . . was unable to find any supporting authority."). Nevertheless, for the present purposes we will assume that the first requirement has been satisfied. We will similarly assume that the affidavit was offered as proof of a material fact, and that it was more probative than other evidence for the point offered. However, we depart with respect to the final requisite.

{16}    In this case, the presentation of the affidavit at trial would have been inconsistent with essential attributes of the adversarial process in at least two respects. First, the absence of any opportunity for cross-examination is highly problematic. "Cross-examination of adverse witnesses is the primary means for testing their truth and credibility and is essential to insure the integrity of the fact-finding process." *State v. Sanders*, 117 N.M. 452, 459, 872 P.2d 870, 877 (1994); *see Empire W. Cos. v. Albuquerque Testing Labs., Inc.*, 110 N.M. 790, 792, 800 P.2d 725, 727 (1990) ("The right to cross-examine is valuable and may not be restricted so as to deprive a party of the right to test the credibility of a witness or to preclude elucidation of the testimony."). In this case, we specifically note that the affidavit omits critical information, such as whether the prescriptions issued to Defendant for the various listed medications were current. This sort of informational gap could have been

8

addressed through cross-examination. Without it, the evidentiary value of the affidavit could not be meaningfully explored.

**{17}** Second, as the most recent version of the rule explicitly provides, the catch-all exception cannot properly be relied upon if it will result in trial by ambush. *See* Rule 11-807(B) (providing that the catch-all exception is applicable "only if, before the trial or hearing, the proponent gives an adverse party reasonable notice of the intent to offer the statement and its particulars . . . so that the party has a fair opportunity to meet it"). The admission of the affidavit in this case would have presented precisely this problem. Defendant failed either to make arrangements to supply the State with an opportunity to interview her doctor prior to trial or to otherwise provide pertinent medical information, and the State's independent efforts were rebuffed. Under such circumstances, the admission of the affidavit at trial, in a fashion that afforded no opportunity for meaningful response, would not have served the larger purposes of the rules and the interests of justice.

**{18}** In light of the foregoing considerations, we conclude that the affidavit was properly classified as inadmissible hearsay. Nevertheless, Defendant contends that the affidavit should have been admitted in order to accommodate her right to present a defense. However, the authority upon which she relies is inapposite, insofar as it concerns the application of the "presumption against exclusion of *otherwise admissible defense evidence*." *State v. Campbell*, 2007-NMCA-051, ¶ 13, 141 N.M.

543, 157 P.3d 722 (emphasis added) (internal quotation marks and citation omitted). We acknowledge the importance of the constitutional right of the accused to present a defense. *State v. Rosales*, 2004-NMSC-022, ¶ 7, 136 N.M. 25, 94 P.3d 768. "However, that right has never been absolute or unlimited." *Id.* "[A] defendant's interest in presenting evidence may at times bow to accommodate other legitimate interests in the criminal trial process[,]" including compliance with the rules of evidence. *Id.* (internal quotation marks and citation omitted). We therefore reject Defendant's suggestion that she was entitled to present otherwise inadmissible hearsay in order to facilitate the presentation of her defense and uphold the district court's ruling as well within its discretion.

**2.      Telephonic Testimony**

{19}      In lieu of testifying in person, Defendant sought to call her doctor to testify telephonically. This request was denied. Defendant challenges this ruling on the ground that telephonic testimony is not categorically prohibited especially where, as here, it is offered by a witness for the defense.

{20}      In New Mexico, we have scant authority concerning whether and under what circumstances a witness in a criminal case may be allowed to testify by telephone. *See State v. Almanza*, 2007-NMCA-073, ¶ 6, 141 N.M. 751, 160 P.3d 932. As Defendant notes, the reported decisions involve situations in which the State has offered telephonic testimony, rather than the defense. Accordingly, satisfaction of the Sixth

Amendment right to face-to-face confrontation has been the critical concern. *Id.* ¶¶ 7-12*; cf. State v. Chung*, 2012-NMCA-049, ¶¶ 8-12, 290 P.3d 269 (addressing the analogous question whether a witness for the State should be permitted to testify via video conference), *cert. quashed*, 2013-NMCERT-003, 300 P.3d 1182. As a consequence, these authorities provide little guidance.

{21} Defendant contends that, insofar as the constitutional right to confrontation is personal and inheres in the individual accused, the State lacked any basis for objecting to the telephonic testimony of her doctor. We disagree. While telephonic testimony is not categorically prohibited, the presentation of testimony in this fashion is inconsistent with fundamental attributes of the fact-finding process. "Traditionally, our legal system has depended upon personal contact between the fact finder and the witness to allow the fact finder to observe the demeanor of the witness as a means of assessing credibility." *Evans v. State, Taxation & Revenue Dep't*, 1996-NMCA-080, ¶ 9, 122 N.M. 216, 922 P.2d 1212. A more thorough examination of the important underlying policies and purposes is set forth in *State ex rel. Children, Youth & Families Department v. Anne McD.*, 2000-NMCA-020, ¶ 21, 128 N.M. 618, 995 P.2d 1060, wherein this Court observed that

> [a] witness'[s] personal appearance in court:
>
> 1. assists the trier of fact in evaluating the witness'[s] credibility by allowing his or her demeanor to be observed first-hand;

11

2.	helps establish the identity of the witness;

3.	impresses upon the witness, the seriousness of the occasion;

4.	 assures that the witness is not being coached or influenced during testimony; [and]

5.	assures that the witness is not referring to documents improperly[.]

The presentation of testimony telephonically runs counter to all of these concerns, and it creates "a risk that a judge may lose some control over the presentation of testimony and course of the trial." *Id.* ¶ 24. These considerations apply equally with respect to telephonic testimony presented by the prosecution and by the defense. We therefore reject Defendant's suggestion that there was no basis for the State's objection to the telephonic testimony in this case.

{22}	Defendant further suggests that the exclusion of the evidence in this case effectively prevented her from presenting a defense. *See March v. State*, 105 N.M. 453, 456, 734 P.2d 231, 234 (1987) (acknowledging a criminal defendant's right to a fair trial and right to present a defense). We regard this as an overstatement in light of other evidence presented by Defendant at trial concerning her various medications and prescriptions. The district court's ruling *did* have the effect of excluding evidence that could have been valuable to the defense. As we previously observed, this is a significant consideration. *See Rosales*, 2004-NMSC-022, ¶ 7. However, it does not give Defendant carte blanche to proceed as she wished. *See id.* Rather, the district

12

court retained its authority to "exercise reasonable control over the mode and order of questioning witnesses and presenting evidence so as to . . . make those procedures effective for determining the truth[.]" Rule 11-611(A)(1) NMRA. When evaluating the admissibility of the telephonic testimony offered in this case, a balancing of competing policies, concerns, and considerations was called for. This was a discretionary matter. *See State v. Martinez,* 2008-NMSC-060, ¶ 8, 145 N.M. 220, 195 P.3d 1232 (observing that if the admission or exclusion of evidence entails a balancing of competing considerations or other situational concerns, review is for abuse of discretion). Ultimately, we cannot say the district court abused its discretion.

**Sufficiency of the Evidence**

{23}    Defendant challenges the sufficiency of the evidence to support her convictions.

{24}    When reviewing a challenge to the sufficiency of the evidence, we review the evidence introduced at trial to determine "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). We view the evidence in the light most favorable to the verdict, resolving all conflicts and indulging all inferences in favor thereof. *State v. Apodaca*, 118 N.M. 762, 766, 887 P.2d 756, 760 (1994).

13

## 1.    Possession of Paraphernalia

{25}    To support a conviction, the State was required to establish that Defendant "had in her possession or control drug paraphernalia which is used to . . . store, contain, [or] conceal . . . a controlled substance[,]" and that Defendant knew it was drug paraphernalia.  *See* NMSA 1978, § 30-31-25.1(A) (2001).

{26}    In this case the conviction was based on the group of small screw-top bottles or tubes attached to a key chain, which contained the Cyclobenzaprine, Gabapentin, Lisinopril, and Naproxen.  Defendant takes issue with the sufficiency of the evidence to support her conviction, based on the absence of any proof that these containers were used to store, contain, or conceal a controlled substance, specifically.

{27}    Nearly all of the testimony at trial simply characterized the various drugs found in the containers on the key chain as prescription medications.  However, Officer Green also described the drugs as "controlled substances."  Accordingly, to the extent that direct evidence was required, this would suffice.  We further note that the jury instruction defining dangerous drugs only excludes the group of controlled substances that are specifically enumerated in Schedule I of the Controlled Substances Act.  *See* NMSA 1978, § 26-1-2(F) (2011) (amended 2013).  Accordingly classification as a dangerous drug does not exclude simultaneous classification as a controlled substance.  And while some of the drugs found in the containers might fall within the exclusion for Schedule I controlled substances, *see generally* NMSA 1978, § 30-31-6 (2007)

14

(amended 2011), no evidence to this effect was presented below, and Defendant makes no such specific argument on appeal. We decline to speculate. Therefore, based on the evidence presented below and all rational inferences therefrom, we conclude that the jury could reasonably have found that the containers constituted drug paraphernalia.

{28} We also understand Defendant to argue that her conviction for possession of paraphernalia should be overturned on double jeopardy grounds based on the case of *State v. Almeida*, 2008-NMCA-068, 144 N.M. 235, 185 P.3d 1085. However, *Almeida* addresses "common household items" or "common, everyday item[s]" that are "only recognizable as drug paraphernalia because they contain a personal supply of drugs." *Id.* ¶¶ 18, 20. On the record before us, we cannot say that the series of small cylindrical screw-top containers attached to the key chain are properly classified as common everyday or household items. As a consequence, we are not persuaded that a double jeopardy problem is presented.

**2. DWI**

{29} The State proceeded on a theory of past driving while impaired to the slightest degree. Accordingly, the State was required to establish that Defendant operated a motor vehicle while under the influence of any drug to such a degree that she was incapable of safely driving. *See* NMSA 1978, § 66-8-102(B) (2008) (amended 2010) (defining the offense of driving while impaired to the slightest degree).

15

{30} As an initial matter, we note that direct evidence is not required to support a conviction for DWI based on past driving while impaired to the slightest degree; circumstantial evidence may properly be relied upon in this context. *See State v. Mailman*, 2010-NMSC-036, ¶¶ 23, 28, 148 N.M. 702, 242 P.3d 269 . We further note that, while an admission standing alone may not be sufficient to sustain a conviction, "an extrajudicial statement may be used to establish the corpus delicti where the statement is shown to be trustworthy and where there is some independent evidence to confirm" the admission. *State v. Weisser*, 2007-NMCA-015, ¶ 18, 141 N.M. 93, 150 P.3d 1043. "In determining the trustworthiness of [a d]efendant's extrajudicial statement, we look not at the circumstances surrounding the statement, but instead at the actual content of the statement and evidence that corroborates the information contained in the statement." *State v. Owelicio*, 2011-NMCA-091, ¶ 27, 150 N.M. 528, 263 P.3d 305, *cert. quashed*, 2012-NMCERT-010, 297 P.3d 333. The requisite independent evidence of past driving while intoxicated may be circumstantial. *Mailman*, 2010-NMSC-036, ¶¶ 23, 28.

{31} In this case the State presented a great deal of compelling circumstantial evidence, including Defendant's admission to driving after taking prescription medication, her presence behind the wheel of a vehicle, the location of the vehicle partially parked in the roadway and facing the wrong direction, Defendant's appearance and physical condition, her poor performance on the field sobriety tests,

16

and the laboratory analysis of Defendant's blood sample. This constitutes a stronger showing than has been deemed sufficient to uphold convictions for DWI based on past driving while impaired in other recent cases. *See id.* ¶¶ 2-5, 24 (observing that there was sufficient circumstantial evidence to support a conviction for past driving while impaired to the slightest degree based on the defendant's presence behind the wheel of a parked vehicle, admissions to having driven and having consumed alcohol, refusal either to perform field sobriety tests or to provide a breath sample, the presence of an open can of beer in the vehicle, and a variety of indicia of intoxication including odor of alcohol, disorientation and confusion, difficulty maintaining balance, and bloodshot watery eyes); *Owelicio*, 2011-NMCA-091, ¶ 33 (concluding that sufficient evidence was presented to support a conviction for DWI based on the defendant's admission that she was driving, the fact that the defendant and a third party who denied driving were the only persons at the scene, and a videotape showing the defendant approaching the passenger side of the vehicle). We specifically note that Defendant's admission to Officer Green that she had driven her vehicle from Vaughn to a location approximately eighty miles south thereof, after having taken prescription medications roughly an hour beforehand, as well as the dangerous positioning of her vehicle on the wrong side and partially in the traveled portion of the road, readily distinguishes this case from other recent authority involving inadequate circumstantial evidence of driving after becoming impaired. *Contra State v. Cotton*, 2011-NMCA-

096, ¶¶ 14-15, 150 N.M. 583, 263 P.3d 925 (holding that there was insufficient evidence to support a conviction, where there was nothing from which the jury could infer that the defendant had driven after he had consumed alcohol and after his ability to drive had become impaired), *cert. denied*, 2011-NMCERT-008, 268 P.3d 514. We therefore conclude that the State presented adequate evidentiary support for a conviction for DWI based on past driving while impaired to the slightest degree.

**3.     Possession of a Dangerous Drug**

{32}     To support a conviction the State was required to prove that Defendant possessed a dangerous drug and that the substance was not dispensed to Defendant either directly by a practitioner or on a prescription. *See* NMSA 1978, § 26-1-16(E) (2005) (amended 2013).

{33}     As previously described, the State presented evidence that a number of prescription drugs were found in Defendant's vehicle. Officer Green testified that only one of these drugs was in a bottle indicating that it had been prescribed to Defendant. The other drugs were found in a group of unmarked, screw-top, cylindrical containers attached to a key chain. The inventory of the vehicle did not yield any other indication that these medications had been prescribed to Defendant. Additionally, Defendant was unable to produce prescriptions despite repeated requests. Finally, when Defendant testified at trial, she only presented bottles and documents tending to establish that she had prescriptions for a few of the drugs at

18

issue. With respect to the other drugs, on cross-examination Defendant simply claimed that she did not have the prescriptions with her on the day of trial, without any further explanation.

{34} We conclude that the foregoing evidence was sufficient to satisfy the State's burden of proof. That Defendant was in possession of prescription medications classifiable as dangerous drugs does not appear to be in question. With respect to the absence of any prescription, the circumstantial evidence was sufficient to support a rational inference. *See State v. Bankert*, 117 N.M. 614, 618, 875 P.2d 370, 374 (1994) ("A conviction will be upheld if based upon a logical inference from circumstantial evidence."). In this regard, we specifically note the placement of the drugs in unmarked containers, as well as Defendant's unexplained failure to present prescription bottles or documents concerning two of the medications at any time, including when she took the stand at trial. *Cf. State v. Brenn*, 2005-NMCA-121, ¶ 16, 138 N.M. 451, 121 P.3d 1050 (holding that in light of the defendant's failure to adequately explain the presence of a large amount of unpackaged drugs, the jury could disbelieve her claim of innocent purpose and instead infer intent to manufacture). We are aware of no authority, and Defendant cites none, requiring more direct or compelling evidence in this context. *See State v. Marquez*, 2007-NMCA-151, ¶ 14, 143 N.M. 79, 173 P.3d 1 ("When a party cites no authority to support an argument, we may assume no such authority exists."), *rev'd on other grounds*, 2008-NMSC-055,

145 N.M. 1, 193 P.3d 548. To the extent that Defendant invites this Court to adopt such a heightened evidentiary requirement, we decline to do so. We therefore reject Defendant's challenge to the sufficiency of the evidence to support her conviction for possession of a dangerous drug.

**Burden of Proof, Possession of a Dangerous Drug**

{35}    Defendant renews her argument, advanced in the course of the post-trial proceedings, that the State was improperly permitted to shift the burden of proof by requiring Defendant to prove that she had a prescription for the various drugs found in her possession.

{36}    On appeal, the State suggests that the possession of a prescription is in the nature of an affirmative defense and, accordingly, the burden was properly placed on Defendant to come forward with evidence on this issue. We are not convinced that this is the case. As Defendant observes, if the Legislature had intended for the possession of a prescription to constitute an affirmative defense, it would presumably have used clear language similar to that employed in the Controlled Substances Act. *See* NMSA 1978, § 30-31-37 (1972) (providing that the burden of proof of any exemption or exception under the Controlled Substances Act is upon the person claiming it). However, it is not necessary or appropriate for us to resolve this question in this case. Insofar as the jury was specifically instructed that the State bore the burden of proving that Defendant did not have a prescription, the State's argument is

20

not properly before us. *See State v. Smith*, 104 N.M. 729, 730, 726 P.2d 883, 884 (Ct. App. 1986) ("Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured.").

{37} Turning to Plaintiff's argument, we are unpersuaded that the burden of proof was improperly shifted in this case. The jury was clearly and specifically instructed that the State bore the burden of proving that Defendant lacked a prescription. The jury is presumed to have read and followed the instructions. *See State v. Smith*, 2001-NMSC-004, ¶ 40, 130 N.M. 117, 19 P.3d 254. And as described at greater length in the preceding subsection of this Opinion, sufficient circumstantial evidence was presented in the course of the trial to support a rational inference that Defendant lacked a prescription for all of the various drugs found in her possession. Because the verdict is not unsupported, we perceive no basis for Defendant's claim that she was impermissibly assigned the burden of disproving an element of the offense.

{38} As we previously observed, it is entirely possible that the jury drew negative inferences from Defendant's testimony, including her failure to present concrete evidence in support of her claim to have possessed prescriptions. However, Defendant's election to testify was a strategic decision, and of course, the jury was entitled to reject her self-serving testimony. *See State v. Foxen*, 2001-NMCA-061, ¶ 17, 130 N.M. 670, 29 P.3d 1071 (observing that juries are not obligated to believe the defendant's testimony, to disbelieve or discount conflicting testimony, or to adopt the

defendant's view). The fact that Defendant's efforts to undermine the State's case proved unsuccessful does not in any way reflect that the burden of proof was improperly allocated to her. We therefore reject Defendant's assertion of error.

**Admission of Lab Report**

{39} Defendant asserts that the lab report describing the results of her blood testing should have been excluded as a consequence of the State's failure to call the various individuals who participated in the testing and the preparation of the report. Because Defendant failed to timely object below, we review only for fundamental error. *See State v. Martinez*, 2007-NMSC-025, ¶ 25, 141 N.M. 713, 160 P.3d 894 (noting that review is for fundamental error where the defendant failed to preserve a confrontation issue); *State v. Onsurez*, 2002-NMCA-082, ¶¶ 19, 21, 132 N.M. 485, 51 P.3d 528 (observing that in order to preserve a challenge to the foundational requirements associated with laboratory test results in a DWI case, the defendant was required to alert the district court to his objection at the time the results of his breath test were offered and entered into evidence).

{40} Recent authorities have clarified that the admission into evidence of forensic reports containing the opinions of non-testifying experts is generally inconsistent with both the right of confrontation and the associated concern for ensuring the opportunity for effective cross-examination. *State v. Aragon*, 2010-NMSC-008, ¶ 25, 147 N.M. 474, 225 P.3d 1280, *overruled on other grounds by State v. Tollardo*,

22

2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110. In this case, however, the report in question was introduced through the testimony of an individual who oversaw the testing of Defendant's blood samples, reviewed the data, and signed the report. While other staff members were involved in the testing process, we conclude that the admission of the report in the absence of these individuals' testimony does not constitute fundamental error. *See, e.g.*, *State v. Cabezuela*, 2011-NMSC-041, ¶¶ 48-52, 150 N.M. 654, 265 P.3d 705 (rejecting a claim of fundamental error in relation to the admission of a forensic report, where the report was introduced through the testimony of a doctor who had supervised the examination and signed the report, and where the testimony included the doctor's own opinions, reached by reviewing records prepared with the assistance of another). Given the circumstances of the admission as to the lab report in this case, we find no error.

**Right to a Fair Trial and Due Process**

{41} Defendant contends that she was denied her rights to a fair trial and due process as a consequence of the district court's repeated rulings against her and in the State's favor. Specifically, Defendant complains that Officer Green was improperly allowed to identify the various prescription drugs at issue in this case without a proper foundation, that the affidavit which she sought to introduce from her doctor was excluded, and that the district court interrupted and "refused to allow her to argue her motion for directed verdict."

23

{42} We perceive no error with respect to any of these matters. Insofar as Defendant raised no objection to Officer Green's testimony, it was properly admitted. By contrast, the State duly objected to the admissibility of the affidavit, and as we have previously explained, that document was properly excluded as hearsay. Finally, the transcript reflects that the district court merely permitted the State to respond in due course to Defendant's motion for directed verdict as to one of the counts. After that matter had been decided, the district court specifically asked Defendant if she had any further motions, but she indicated that she did not.

{43} As Defendant suggests throughout her briefs to this Court, it is possible that her election to proceed pro se at trial may have disadvantaged her. However, that decision was fully-informed and against the district court's repeated advice. As an elective pro se litigant, it was Defendant's responsibility to present her defense. Defendant's realization in hindsight that it might have been advisable to handle things differently does not supply a basis for relief on appeal.

**Supplemental Information**

{44} Finally, Defendant challenges the sufficiency of the State's evidence to support the habitual offender sentence enhancement imposed below.

{45} New Mexico's habitual offender statute sets out mandatory sentence enhancements for defendants who have prior felony convictions that occurred up to

24

ten years before the underlying conviction. *See* NMSA 1978, § 31-18-17 (2003); *State v. Perry*, 2009-NMCA-052, ¶ 56, 146 N.M. 208, 207 P.3d 1185. In support of such a sentence enhancement, the State must make a prima facie showing, by a preponderance of the evidence, that: "(1) the defendant is the same person, (2) the defendant has been convicted of the prior felon[ies], and (3) less than ten years has passed since the defendant completed serving the sentence, probation, or parole." *State v. Clements*, 2009-NMCA-085, ¶ 22, 146 N.M. 745, 215 P.3d 54. Once the State makes a prima facie showing, the burden of proof shifts to the defendant. *State v. Simmons*, 2006-NMSC-044, ¶ 13, 140 N.M. 311, 142 P.3d 899.

{46}	When considering whether the State satisfied its initial burden, we review for substantial evidence. *Clements*, 2009-NMCA-085, ¶ 27. Accordingly, we must view the evidence in the light most favorable to the State, resolving all conflicts therein and indulging all permissible inferences therefrom in favor of the decision rendered below. *Id.*

{47}	In this case, the State presented certified copies of two judgments of conviction from Colorado. These documents accurately reflect Defendant's name and date of birth. They further reflect that Defendant had been convicted of forgery and possession of controlled substances on May 27, 2003 and June 14, 2005, and indicate that Defendant received a three-year sentence in connection with the former judgment and a fifteen-month sentence in connection with the latter. Insofar as these documents

25

supplied admissible and persuasive evidence of all of the requisites (identity, conviction, and timing), they were sufficient to satisfy the State's initial burden of proof. Because Defendant presented nothing in response to support any assertion of invalidity, the district court properly applied a four-year sentence enhancement in this case.

{48} In reliance upon *Clements*, Defendant contends that the State's showing was inadequate because neither fingerprints nor photographs were presented to conclusively establish identity. However, the absence of such evidence in *Clements* was significant because the judgments upon which the State relied did not reflect exactly the same name and contained no other identifying information such as birth date. *Id.* ¶ 20. Accordingly, the State's "reliance on a three-page judgment that simply stated a name similar to [the d]efendant's name and nothing else" was insufficient to make a prima facie showing. *Id.* ¶ 29. In this case, by contrast, the certified copies of the judgments accurately reflected both Defendant's name and her date of birth. In light of this showing, additional evidence such as fingerprints or photographs was not necessary.

**CONCLUSION**

{49} For the foregoing reasons, we affirm.

{50} **IT IS SO ORDERED.**

_____

**LINDA M. VANZI, Judge**

**WE CONCUR:**

_____

**M. MONICA ZAMORA, Judge**

_____

**J. MILES HANISEE, Judge**