This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-35499**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**JOSEPH A. GRUBB,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**James Waylon Counts, District Judge**

Hector H. Balderas, Attorney General
Eran S. Sharon, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Aja Oishi, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**M. ZAMORA, Chief Judge.**

**{1}** Defendant, Joseph A. Grubb, appeals his convictions, arguing that his speedy trial right was violated and that the district court improperly denied him presentence confinement credit. Defendant also raises several arguments under *State v. Franklin*, 1967-NMSC-151, 78 N.M. 127, 428 P.2d 982, and *State v. Boyer*, 1985-NMCA-029, 103 N.M. 655, 712 P.2d 1. We conclude that Defendant's speedy trial rights were not violated and affirm his conviction. We further conclude that Defendant is entitled to more presentence confinement credit than he received at his sentencing, and that one of his

*Franklin/Boyer* arguments—that there was insufficient evidence to support his enhancement as a habitual offender—is meritorious. We therefore reverse and remand for entry of judgment and sentence consistent with this opinion. Defendant's remaining *Franklin/Boyer* arguments are without merit.

**BACKGROUND**

**{2}** While on probation for a prior 2008 conviction, Defendant was arrested on March 24, 2011, after officers discovered heroin on his person. A grand jury indicted Defendant for trafficking a controlled substance with intent to distribute, tampering with evidence, and resisting, evading, or obstructing an officer. Defendant posted bond on July 8, 2011, and was released. When he failed to appear for trial on February 16, 2012, the district court issued a bench warrant and revoked his bond.

**{3}** On January 19, 2013, more than a year after Defendant failed to turn himself into the detention center, he was arrested and booked on new charges under his half-brother's name, Deciderio Nieto. On February 7, 2013, the same day that Defendant bonded out on those new charges, he was arrested again. This time, Defendant provided his real name, but the arresting officer did not believe him and again arrested and booked Defendant as Deciderio Nieto. The surety for Defendant's bond in this case filed a motion in district court on March 1, 2013, seeking exoneration of the bond and alerting the district court to Defendant's presence in the Lea County Detention Center under the name Deciderio Nieto. The district court granted that motion on April 5, 2013.

**{4}** On September 15, 2014, the State sent a request for detainers to the jail where Defendant was incarcerated as Deciderio Nieto. Litigation in this case resumed in earnest on October 16, 2014, and Defendant received a jury trial on August 13, 2015. Defendant was convicted, and the district court sentenced him to one year and six months incarceration each for possession and tampering, with those counts to run consecutively, as well as 364 days of incarceration for resisting, evading, or obstructing an officer, with that count running consecutively to the other two. In addition, the district court enhanced both Defendant's felony convictions by four years based on two prior convictions. In total, the district court sentenced Defendant to eleven years and 364 days incarceration, less 276 days presentence confinement credit, plus one year parole. Defendant appeals.

**DISCUSSION**

**{5}** We begin by assessing Defendant's speedy trial claim. We then address Defendant's argument that the district court erroneously denied him presentence confinement credit. Finally, we address Defendant's *Franklin/Boyer* arguments.

**I.      Speedy Trial**

**{6}** A criminal defendant has the right to a speedy trial, "guaranteed by both the Sixth Amendment of the United States Constitution and Article II, Section 14 of the New

Mexico Constitution." *State v. Spearman*, 2012-NMSC-023, ¶ 16, 283 P.3d 272. Our courts have rejected an inflexible, bright-line approach to analyzing a speedy trial claim in favor of a sometimes "amorphous, slippery, and necessarily relative" approach that considers each factor on a case-by-case basis. *State v. Garza*, 2009-NMSC-038, ¶¶ 11-14, 146 N.M. 499, 212 P.3d 387 (internal quotation marks and citation omitted). When considering whether a defendant has been deprived of his right to a speedy trial, we use the four-factor test set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), which balances "the length of delay, the reason for delay, the defendant's assertion of the right to a speedy trial, and the prejudice to the defendant." *State v. Ochoa*, 2017-NMSC-031, ¶ 4, 406 P.3d 505. "We defer to the district court's factual findings in considering a speedy trial claim, but weigh each factor de novo." *Id.*

## A.    Length of Delay

{7}     The length of delay in a speedy trial case is both a threshold question and a factor to be weighed with the other *Barker* factors. *State v. Serros*, 2016-NMSC-008, ¶ 22, 366 P.3d 1121. The speedy trial right attaches when the defendant becomes an "accused," meaning either at the time of arrest or upon issuance of a charging document. *Salandre v. State*, 1991-NMSC-016, ¶ 13, 111 N.M. 422, 806 P.2d 562. The timeframe for bringing a case to trial depends on the complexity of the case: "twelve months for simple cases, fifteen months for intermediate cases, and eighteen months for complex cases." *Garza*, 2009-NMSC-038, ¶ 2. These guidelines for bringing a case to trial do not dispose of the claim, but instead prompt further analysis of the remaining factors. *Ochoa*, 2017-NMSC-031, ¶¶ 13-14. We defer to the district court's finding regarding the complexity of a case where that determination is supported by the number of charges and the nature of the allegations. *Id.* ¶ 14; *State v. Rojo*, 1999-NMSC-001, ¶ 52, 126 N.M. 438, 971 P.2d 829 (stating that the district court is in the best position to determine the complexity of a case because of its familiarity with the factual circumstances, contested issues, available evidence, judicial machinery, and "reasonable expectations for the discharge of law enforcement and prosecutorial responsibilities" (internal quotation marks and citation omitted)).

{8}     Defendant was arrested in this case on March 24, 2011, and his trial commenced August 13, 2015, resulting in a case pending against Defendant for approximately four years and five months. In the district court, the parties stipulated that this case is a simple one, and they agree on appeal that this Court should give deference to that stipulation. We see no reason to conclude otherwise. As such, the delay in this case far exceeds the presumptively prejudicial period of twelve months, warranting a full *Barker* analysis. The length of delay prong of the *Barker* test weighs heavily against the State because it took more than four years for Defendant to receive a trial in his simple case. *See Serros*, 2016-NMSC-008, ¶ 24 (deeming delay of over fifty one months "extraordinary," and weighing it "heavily in [the d]efendant's favor"); *State v. Gallegos*, 2016-NMCA-076, ¶ 8, 387 P.3d 296 (weighing delay of two-and-a-half years in simple case heavily against the state).

## B.    Reason for Delay

**{9}** When evaluating the reason for delay under the second *Barker* factor, our courts have recognized four types of delay: deliberate delay, negligent or administrative delay, neutral delay, and defense delay. *Serros*, 2016-NMSC-008, ¶ 29. A deliberate attempt to delay the trial in order to hamper the defense is weighted heavily against the government, while negligent or administrative delay weighs less heavily, but still slightly, against the State. *See id.* ("As the length of delay increases, negligent or administrative delay weighs more heavily against the [s]tate."); *Garza*, 2009-NMSC-038, ¶¶ 25-26, 29 (stating that the extent to which negligent delay is weighed against the state depends on the length of delay, and explaining that the longer the delay, the more heavily it is weighed). "[N]eutral delay, . . . justified by a valid reason, does not weigh against either party[, and] delays initiated by [the] defense [are] generally weigh[ed] against the defendant." *Ochoa*, 2017-NMSC-031, ¶ 18.

**{10}** This case was subject to six trial settings over the course of litigation. The time that passed between Defendant's arrest on March 24, 2011, and the first trial setting on August 18, 2011, was the result of the case progressing in a normal fashion. *See Garza*, 2009-NMSC-038, ¶ 27 (recognizing that some pretrial delay is inevitable and justifiable). Accordingly, we weigh that time period neutrally. *See Gallegos*, 2016-NMCA-076, ¶ 11 (weighing neutrally a period of delay where the case was "proceeding more or less normally").

**{11}** Defendant sought and obtained a continuance of the first trial setting, and shortly thereafter, the district court entered a stipulated order continuing the second trial setting based on the same grounds as Defendant's first continuance. The district court rescheduled trial for February 16, 2012. Defendant failed to appear for the February 16, 2012 trial, and approximately a year later, on February 26, 2013, Defendant was identified as the individual incarcerated as Deciderio Nieto in another case.[1] This approximately eighteen-month delay between the first trial setting and Defendant's reappearance on February 26, 2013, weighs against Defendant. *See State v. Estrada*, 2016-NMCA-066, ¶ 55, 377 P.3d 476 (acknowledging that confusion over the defendant's location was a cause for delay and affirming the district court's decision attributing that delay to the defendant).

**{12}** The State argues, however, that the delay that resulted between February 26, 2013, and the order exonerating bond on April 5, 2013, should also be weighed against Defendant. We disagree. Although the state is not responsible for periods of delay in which the accused is outside of the jurisdiction and it is unaware of a defendant's whereabouts, *see State v. Palacio*, 2009-NMCA-074, ¶ 15, 146 N.M. 594, 212 P.3d 1148, the State is charged with having constructive knowledge of an individual's whereabouts when an individual is in the state's custody. *See State v. Maddox*, 2008-NMSC-062, ¶ 15, 145 N.M. 242, 195 P.3d 1254, *abrogated on other grounds by Garza*, 2009-NMSC-038, ¶¶ 47-48. As of February 26, 2013, the State was aware of Defendant's whereabouts, knew that Defendant was in its custody under an alias, and

---

1Although the district court did not file an order exonerating bond in this case until April 5, 2013, both the order and the motion indicate the State was notified of Defendant's status on February 26, 2013.

knew what that alias was. At that point, the delay in bringing the case to trial was no longer attributable to Defendant's actions.

**{13}** The State also argues that the district court made a factual finding when it attributed the delay between the first trial setting and September 15, 2014, to Defendant because of Defendant's misrepresentations regarding his identity. The State argues that we must give that finding deference on appeal. We disagree. The district court's conclusion is contrary to well-established law that assigns constructive knowledge of a defendant's whereabouts to the State when the defendant is in state custody. Furthermore, the district court's conclusion depends on the assumption that the State was unaware of Defendant's use of the alias, Deciderio Nieto, until September 2014 and that assumption is not supported by the evidence. *See State v. Montoya*, 2015-NMCA-056, ¶ 12, 348 P.3d 1057 (noting that appellate courts defer to the district court's factual finding only to the extent those findings are "supported by substantial evidence"). Both the motion to exonerate bond and the resulting order acknowledge that the State received notice of the bases for the motion, namely Defendant's use of and incarceration using an alias, on February 26, 2013. We are therefore unpersuaded by the State's argument that the utter lack of activity in Defendant's case for more than a year between February 26, 2013, and September 15, 2014, was attributable to Defendant because his misrepresentations regarding his identity rendered the State unable to identify or locate Defendant.

**{14}** Aside from a bench warrant for Defendant's arrest, obtained July 29, 2014, the State put forth little evidence regarding the efforts it made between February 26, 2013, and September 15, 2014, to bring the case to trial. Instead, the State asserts on appeal that it encountered "considerable difficulty" placing detainers on Defendant because he concealed his identity. "[T]he argument[s] of counsel are not evidence." *State v. Cordova*, 2014-NMCA-081, ¶ 14, 331 P.3d 980. Because the State had constructive knowledge of Defendant's whereabouts and put forth minimal evidence of its efforts to bring the case to trial prior to placing the request for detainers on September 15, 2014, we conclude that the approximately one-and-a-half-year delay between February 26, 2013, and September 15, 2014, constitutes bureaucratic indifference by the State. *See Zurla v. State*, 1990-NMSC-011, ¶ 15, 109 N.M. 640, 789 P.2d 588 (concluding that the state's failure to inquire as to the defendant's whereabouts despite receiving notice of his whereabouts amounted to "unacceptable indifference by the prosecution to its constitutional duty to make a diligent, good-faith effort to bring a defendant to trial"); *State v. Laney*, 2003-NMCA-144, ¶ 17, 134 N.M. 648, 81 P.3d 591 (stating that "bureaucratic indifference or failure to take reasonable means to bring a case to trial . . . weigh[s] more heavily against the [s]tate"); *see also Garza*, 2009-NMSC-038, ¶ 26, 30 (stating that the weight assignable to negligent delay is closely related to the length of delay and that the weight increases with the delay's "protracted[ness]").

**{15}** Once the State submitted a request for detainers on September 15, 2014, the case proceeded with customary promptness until the fourth trial setting on February 9, 2015; the district court filed a scheduling order and held a hearing on the State's motion, while new defense counsel was appointed to Defendant's case on December, 30,

2014.[2] The approximately five-month delay that occurred between the detainers and the second trial setting therefore weighs neutrally. *See Maddox*, 2008-NMSC-062, ¶ 27 (noting that periods of time where "the case [is] mov[ing] toward trial with customary promptness" are weighed neutrally), *abrogated on other grounds by Garza*, 2009-NMSC-038.

**{16}** Just before trial was scheduled to begin in February 2015 Defendant filed a motion seeking a continuance, asserting that defense counsel needed more time to investigate, and the district court granted the motion. The State sought to ensure progress in the case by requesting a date certain for the trial, which the district court identified as May 4, 2015. Because Defendant sought the continuance that gave rise to this roughly three-month delay between February 9, 2015, and May 4, 2015, that delay is attributable to Defendant.

**{17}** Shortly before May 4, 2015, defense counsel filed another motion to continue the trial, that the district court denied. Defense counsel then filed a motion to dismiss on speedy trial grounds on April 30, 2015, three days after the district court denied his request for a continuance and only days before trial was scheduled to begin. By that time, the district court did not have enough time to hold a hearing on the motion to dismiss before the scheduled trial date, so rather than commence trial on May 4, 2015, the district court heard the parties' arguments regarding the motion to dismiss. Despite the district court having denied Defendant's motion for continuance, the trial was nonetheless postponed to August 13, 2015 (the sixth setting). While the delay was occasioned in part by Defendant's late-filed motion that required consideration prior to trial, which would normally weigh against Defendant, the delay was also the result of the district court's inability to hear the motion prior to trial, which would weigh slightly against the State. *See, e.g.*, *State v. Vigil-Giron*, 2014-NMCA-069, ¶¶ 24, 35, 327 P.3d 1129 (recognizing "the validity of the notion that the time required to respond to or hear a defendant's motion generally does not count against the government"); *see also State v. Samora*, 2016-NMSC-031, ¶ 11, 387 P.3d 230 (acknowledging that administrative delay weighs against the state). Because each of these reasons functionally cancel the other out, we conclude that the additional three-month delay between the fifth and sixth trial setting weighs neutrally. The trial began August 13, 2015, without any additional delay.

## C. Assertion of Right

**{18}** Under the third *Barker* factor, we look to whether Defendant asserted his right to a speedy trial, including the frequency and force of Defendant's objections to delay, as well as whether an assertion of the right is purely pro forma. *Ochoa*, 2017-NMSC-031, ¶ 41 ("Pro forma assertions are sufficient to assert the right, but are given little weight in a defendant's favor."); *Serros*, 2016-NMSC-008, ¶ 76 (considering "[t]he timeliness and vigor with which the right is asserted . . . as an indication of whether . . . the issue was raised on appeal as an afterthought" (alteration, internal quotation marks, and citation

---

[2]Although counsel did not enter his appearance with the district court until January 20, 2015, he represented to the district court that he had been appointed to the case on December 30, 2014.

omitted)); *Garza*, 2009-NMSC-038, ¶ 32 (stating appellate courts "assess the timing of the . . . assertion and the manner in which the right was asserted"). Additionally, "[t]he effect of a defendant's assertion of his speedy trial right may be diluted where his own actions caused the delay." *Montoya*, 2015-NMCA-056, ¶ 22.

**{19}** Defense counsel made a pro-forma request for speedy trial when he entered his appearance on January 20, 2015, which we afford little weight in our analysis. *See Ochoa*, 2017-NMSC-031, ¶ 41. Defendant also filed a motion to dismiss for a speedy trial violation, in which defense counsel noted that Defendant had requested he file that motion in January 2015, as well as a motion to reconsider when the district court denied that motion to dismiss. These motions were filed on April 30, 2015, and May 14, 2015, respectively. Given that the motion to dismiss was filed mere days before the fifth trial setting in this case, it weighs only slightly in Defendant's favor. *See State v. Ortiz-Burciaga*, 1999-NMCA-146, ¶ 35, 128 N.M. 382, 993 P.2d 96 (concluding that "we do not give [the d]efendant much weight" for a motion to dismiss on speedy trial grounds, filed "just prior to trial[,]" as "most of the delay had already passed and he moved for dismissal rather than for a prompt trial"); *see also State v. Moreno*, 2010-NMCA-044, ¶ 33, 148 N.M. 253, 233 P.3d 782 ("We recognize that generally, the closer to trial an assertion is made, the less weight it is given."). The motion to reconsider weighs slightly more in Defendant's favor because it was filed approximately three months before the final trial setting. However, Defendant's assertions of the right, through both the motion to dismiss and the motion for reconsideration, were diluted by Defendant's requests for continuances. *See Garza*, 2009-NMSC-038, ¶ 32 (noting that the appellate courts "analyze the defendant's actions with regard to the delay"). We therefore conclude that this prong weighs slightly in Defendant's favor. *See Montoya*, 2015-NMCA-056, ¶¶ 23-24 (concluding that factor weighted slightly to moderately in the defendant's favor where he asserted his right three times, made persistent efforts to prepare his defense, and the state had been admonished for failing to move the case forward).

## D. Prejudice

**{20}** The final *Barker* factor, prejudice to Defendant, is assessed in light of the interests that the speedy trial right is designed to protect: "preventing oppressive pretrial incarceration, minimizing anxiety and concern of the accused, and limiting the possibility that the defense will be impaired." *Ochoa*, 2017-NMSC-031, ¶ 48. "The oppressive nature of the pretrial incarceration depends on the length of incarceration, whether the defendant obtained release prior to trial, and what prejudicial effects the defendant has shown as a result of the incarceration." *Garza*, 2009-NMSC-038, ¶ 35. While a defendant generally has the burden of proving prejudice, a particularly "lengthy and onerous pretrial incarceration may render affirmative proof unnecessary" to find prejudice. *Ochoa*, 2017-NMSC-031, ¶¶ 52-54. Under those circumstances, "the oppressive nature of the incarceration [may be] self-evident based on the sheer length of incarceration[,]" and a defendant may not need "to present affirmative proof in support of a prejudice claim." *Id.* ¶¶ 54-55 (describing the length of incarceration as "a counterweight to a defendant's burden of production").

**{21}** Although Defendant has provided no affidavits, testimony, or other documentation to support his claims of prejudice, it is appropriate to presume prejudice exists because of the lengthy delay in this case. *Id.* ¶ 57 (presuming prejudice from two-year incarceration). However, given the lack of proof, we must determine whether Defendant's assertions of prejudice are anything more than mere speculation. *See id.* ¶¶ 60-62.

**{22}** Defendant claims he was prejudiced because he was hampered in his ability to assist in the preparation of his defense, he lost time with his family, he suffered anxiety, he had to endure oppressive pretrial incarceration, and he lost the opportunity to serve concurrent sentences. First, we note that although defense counsel sought to continue the trial because of an alleged inability to communicate with Defendant, Defendant does not point with any particularity the ways in which he would have assisted in his own defense if he were not incarcerated. *Cf. id.* ¶ 62 (presuming prejudice, but noting the defendant's failure to state with particularity the evidence that may have been offered absent the delay). The particular circumstances of the defendant's lost time with family and anxiety are unknowable in the absence of any affirmative proof, and we will not speculate. *See id.* ¶¶ 60-61. Defendant's generic assertions regarding anxiety leave us unable to conclude he suffered anxiety so undue as to warrant weighing this factor in his favor. *See Garza*, 2009-NMSC-038, ¶ 35 (acknowledging that "some degree of oppression and anxiety is inherent for every defendant who is jailed while awaiting trial" (alterations, internal quotation marks, and citation omitted)).

**{23}** We likewise cannot conclude that Defendant was subjected to oppressive pretrial incarceration. Defendant's only argument to support his assertion that he endured oppressive pretrial incarceration is that he lost the possibility of serving concurrent sentences because of the excessive delay in this case. *See Zurla*, 1990-NMSC-011, ¶ 23 (holding that the "loss of the possibility of serving concurrent sentences did constitute an aspect of prejudice" relevant to oppressive pretrial incarceration). Defendant cannot be said to have suffered oppressive pretrial incarceration during a large portion of his time spent in incarceration because he was incarcerated on other charges while he awaited trial on this matter. *State v. Urban*, 2004-NMSC-007, ¶ 17, 135 N.M. 279, 87 P.3d 1061 (holding that the defendant "was incarcerated on other charges and thus, despite the delay, was not subject to oppressive pretrial incarceration"). The remaining portion of Defendant's pretrial incarceration does not amount to undue prejudice because although the loss of opportunity to serve sentences concurrently is a recognized aspect of prejudice, it is entirely speculative whether the district court would have chosen to exercise its discretion during sentencing to run the sentences concurrently. *See Maddox*, 2008-NMSC-062, ¶ 35 (declining to find undue prejudice because of the speculative nature of the defendant's concurrent sentences argument); *see also Garza*, 2009-NMSC-038, ¶ 35 (declining to speculate "as to the impact of pretrial incarceration on a defendant").

**{24}** Although this factor weighs in Defendant's favor because of the presumptively prejudicial period of delay, it does so only slightly because of Defendant's reliance on speculation in all other aspects of his prejudice arguments.

### E. Balancing Factors

**{25}** The approximately forty-one months of delay in this simple case weighs heavily against the State. Approximately thirteen months of that delay weighs neutrally, and while nineteen months of delay weighs heavily against the State, the majority of the delay—approximately twenty-one months—is attributable to Defendant. Although Defendant's assertions of his right to a speedy trial were tempered by his own actions, the assertions weigh slightly in Defendant's favor. As to prejudice, Defendant has failed to demonstrate any prejudice beyond the presumptive prejudice that arises from the lengthy delay. Given that so much of the delay in this case is attributable to Defendant's actions, we conclude that the district court did not err when it denied Defendant's motion to dismiss for speedy trial violations.

## II. Presentence Confinement Credit

**{26}** The district court awarded Defendant 276 days of presentence confinement credit for time that Defendant spent incarcerated while awaiting trial, though it is not clear from the record how the district court calculated that number, and both parties disagree with the district court's calculation. While the parties agree that Defendant is entitled to credit for the 107 days of incarceration between his arrest on March 24, 2011, and July 8, 2011, when he posted bond and was released, they disagree on the remaining computation, with Defendant arguing he is entitled to 1,005 days total credit and the State claiming he is only entitled to 439 days total credit. The discrepancy in their calculations stems from a disagreement over whether Defendant's incarceration as Deciderio Nieto counts toward his presentence confinement credit in this case under NMSA 1978, Section 31-20-12 (1977). Defendant seeks credit for the 898 days between February 26, 2013, when the State had constructive knowledge of his whereabouts, and his trial on August 13, 2015. The State argues Defendant is only entitled to the time between September 15, 2014, when Defendant was subject to detainers in this case, and the start of his trial on August 13, 2015.

**{27}** Section 31-20-12 requires that "[a] person held in official confinement on suspicion or charges of the commission of a felony shall, upon conviction of that or a lesser included offense, be given credit for the period spent in presentence confinement against any sentence finally imposed for that offense." In cases where a defendant is involved in multiple judicial proceedings and has been involved in separate sentencing proceedings, three factors are relevant to determining whether presentence confinement should be granted for overlapping confinements. "[Those] three factors are: (1) whether defendant was originally confined, (2) whether the charges related to the sentence triggered the confinement, and (3) whether bond was set in the case related to the sentence." *State v. Romero*, 2002-NMCA-106, ¶ 11, 132 N.M. 745, 55 P.3d 441 (citing *State v. Facteau*, 1990-NMSC-040, ¶ 7, 109 N.M. 748, 790 P.2d 1029). The main inquiry in determining whether credit must be given is whether the confinement is related to the charges for which the defendant is ultimately sentenced. *See State v. Ruiz*, 1995-NMCA-093, ¶ 1, 120 N.M. 420, 902 P.2d 575. Where "nothing about the fact of incarceration that was either caused by or related to the charges for which credit was

sought[,]" credit need not be given. *Ruiz*, 1995-NMCA-093, ¶ 4 (distilling caselaw in which the giving of credit was not required).

**{28}** The charges Defendant accrued as Deciderio Nieto, and the confinement that resulted from those charges, were entirely unrelated to this case. By using an alias, Defendant essentially severed any ties between the drug charges in this case and the charges he accrued as Nieto. Although Defendant was subject to an arrest warrant with a no-bond hold in this case when he incurred the Nieto charges, that no-bond hold had no effect on Defendant's confinement in the Nieto cases. In fact, Defendant was released twice from custody while posing as Nieto. The drug charges related to the sentence in this case therefore in no way triggered Defendant's confinement in either of the Nieto cases. Similarly, the Nieto cases did not trigger Defendant's confinement in this case, but they did serve to alert the State of Defendant's whereabouts. There is no evidence that authorities in this case were aware of Defendant's use of an alias or of Defendant's involvement in the Nieto cases until February 2014 and they exercised no control over Defendant's custody until September 15, 2015, when the State sent a request for detainers to the correctional facility housing Defendant under the Nieto alias. Defendant's confinement in this case therefore did not become intertwined with the Nieto cases until September 15, 2014, rendering that date the relevant date for calculating Defendant's presentence confinement credit. As such, the district court was obligated to credit Defendant for time spent in confinement from that date forward, resulting in 439 days of presentence confinement credit.

### III.    Defendant's Remaining Assertions of Error

**{29}** Defendant makes several other arguments, pursuant to *Franklin*, 1967-NMSC-151 and *Boyer*, 1985-NMCA-029. First, Defendant's argument that the district court erred when it denied Defendant's motion to quash the indictment and subsequent request for an interlocutory appeal is unpersuasive in light of the discretionary nature of both good cause determinations and interlocutory appeals. *See* Rule 5-601(D) NMRA (requiring that all motions be filed within ninety days of arraignment unless good cause is shown for an extension); *see also* NMSA 1978, Section 39-3-3(A)(3) (1972) (noting discretionary nature of interlocutory appeals). Defendant moved to quash the May 10, 2011 indictment, claiming that he had a right to testify at grand jury, pursuant to NMSA 1978, § 31-6-11(C)(3)-(4) (2003), and that he had requested to testify. The district court denied his motion to quash as untimely because it was not filed within ninety days as required by Rule 5-601(D). Defendant fails to cite any authority that his counsel's new appointment to his case would provide good cause under the rule to permit an untimely delay. *See State v. Godoy*, 2012-NMCA-084, ¶ 5, 284 P.3d 410 (stating that where a party fails to cite authority in support of an argument, we may assume that no such authority exists). Defendant's argument that the district court erred in denying leave to file an interlocutory appeal on this issue is undeveloped and we will not review it. *See State v. Fuentes*, 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181 (noting that we will "not review unclear or undeveloped arguments [that] require us to guess at what a part[y's] arguments might be").

**{30}** Defendant's second argument, that the district court erred by denying Defendant's motion to continue, is similarly unpersuasive, having neither shown an abuse of discretion nor that the decision prejudiced him in any way. *See, e.g., State v. Brazeal*, 1990-NMCA-010, ¶ 16, 109 N.M. 752, 790 P.2d 1033 (noting that the district court has "broad discretion in ruling on a motion for continuance"); *see also State v. Salazar*, 2007-NMSC-004, ¶ 16, 141 N.M. 148, 152 P.3d 135 ("[The d]efendant must show that the denial of the continuance prejudiced him."). Third, Defendant argues that the district court erred in allowing over six months to pass between trial and sentencing, citing Rule 5-701(B) NMRA, which provides that "[e]xcept for good cause shown, the sentencing hearing shall begin within ninety (90) days from the date the trial was concluded[.]" Defendant has pointed to no authority to support his assertion that the district court erred in concluding that its busy docket amounted to good cause for delay in holding the sentencing hearing. We therefore do not consider this argument. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 ("We assume where arguments in briefs are unsupported by cited authority, counsel after diligent search, was unable to find any supporting authority. We therefore will not do this research for counsel. Issues raised in appellate briefs which are unsupported by cited authority will not be reviewed by us on appeal." (citation omitted)); *ITT Educ. Servs, Inc. v. Taxation & Revenue Dep't*, 1998-NMCA-078, ¶ 10, 125 N.M. 244, 959 P.2d 969 (acknowledging that this Court does not consider propositions that are unsupported by citation to authority).

**{31}** Defendant also makes multiple assertions of error related to the district court's enhancement of his sentence. First, Defendant argues that the district court improperly enhanced his sentence, citing *State v. Alderete*, 1975-NMCA-080, ¶ 10, 88 N.M. 150, 538 P.2d 422, as support. However, the statute upon which the relevant reasoning from *Alderete* is based upon has since been amended, rendering *Alderete* unpersuasive. *See State v. Anaya*, 1997-NMSC-010, ¶¶ 59-62, 123 N.M. 14, 933 P.2d 223 (interpreting the Controlled Substances Act in relation to habitual offender statute after habitual offender statue was amended). Next, Defendant cites *State v. Simmons*, 2006-NMSC-044, ¶ 8, 140 N.M. 311, 142 P.3d 899, to argue that the district court improperly enhanced his sentence while he was still serving time for a prior conviction. The interpretation on which this argument relies, however, is overly-narrow and directly contradicts the well-established principle that "[t]he [s]tate may seek habitual-offender status at *any time before the defendant finishes serving the term of incarceration* and any parole or probation that may follow that term." *State v. Trujillo*, 2007-NMSC-017, ¶ 12, 141 N.M. 451, 157 P.3d 16 (emphasis added) (internal quotation marks and citation omitted). Defendant also argues that double jeopardy precludes using a prior conviction to enhance a felony more than one time, citing *State v. Baker*, 1977-NMCA-033, 90 N.M. 291, 562 P.2d 1145, as support. This argument is unpersuasive in light of existing precedent. *See State v. Freed*, 1996-NMCA-044, ¶ 9, 121 N.M. 569, 915 P.2d 325 (stating that the prohibition against double jeopardy does not apply in the habitual offender context because a sentence is no longer valid once it is proved that the defendant has prior convictions that must be used to enhance the sentence, and the invalid sentence may then be superseded by a valid enhanced sentence); *Baker*, 1977-NMCA-033, ¶ 17 (acknowledging that "enhanced sentences are new sentences").

**{32}** Finally, Defendant argues that under *State v. Griffin*, 1988-NMCA-101, ¶ 17, 108 N.M. 55, 766 P.2d 315, the State failed to provide sufficient evidence of identity with regard to a prior conviction in El Paso, Texas, to enhance his sentence using that conviction. A sentence enhancement under NMSA 1978, Section 31-18-17(D) (2003), requires that the State prove, by a preponderance of the evidence, that: "(1) the defendant is the same person, (2) the defendant has been convicted of the prior felony, and (3) less than ten years has passed since the defendant completed serving the sentence, probation, or parole." *State v. Clements*, 2009-NMCA-085, ¶ 22, 146 N.M. 745, 215 P.3d 54; *see also Simmons*, 2006-NMSC-044, ¶¶ 9, 11 (requiring that the state present a prima facie case showing identity, prior conviction, and timing). Once the State meets its burden of making a prima facie showing of identity, the burden shifts to the defendant, "to produce evidence that supports the assertion of invalidity." *Clements*, 2009-NMCA-085, ¶ 22. When evaluating the sufficiency of the evidence, we consider whether substantial evidence—that which a reasonable person would consider adequate to support a defendant's guilt—supports the district court's decision. *Id.* ¶ 27. We view the evidence in the light most favorable to the State, resolving all conflicts and indulging all inferences in favor of conviction. *Id.*

**{33}** Where the State presents some identifying information that exists both in the prior conviction and the current one, courts generally treat that as sufficient to support the enhancement. *See Simmons*, 2006-NMSC-044, ¶ 14 (noting that the burden of proof on the state "is not onerous"). Identifying information broadly encompasses various types of evidence, including a judgment and sentence that list a birth date and social security number, s*ee Clements*, 2009-NMCA-085, ¶ 20 (noting that judgment and sentence contained no information regarding the defendant's birth date or social security number), photographs, circumstantial evidence regarding location, and fingerprints, which are usually accompanied by testimony matching fingerprints from prior cases to current ones, *see State v. Salas*, 2017-NMCA-057, ¶ 8, 400 P.3d 251 (affirming the district court's determination that evidence was insufficient where the state provided fingerprints for prior convictions but not current case); *State v. Perry*, 2009-NMCA-052, ¶ 57, 146 N.M. 208, 207 P.3d 1185 (concluding evidence of identity was sufficient, including the detective's testimony that the defendant hailed from the same state as prior conviction and fingerprint expert's matching the defendant's fingerprints to those taken in conjunction with prior case). Consistency in the identifying information between a prior conviction's information and the current conviction is also important in a sufficiency determination. *See Clements*, 2009-NMCA-085, ¶ 29 (concluding that "reliance on a three-page judgment that simply stated a name similar to [the d]efendant's name and nothing else" did not satisfy the state's burden of proving identity). *But see State v. Gibson*, 1992-NMCA-017, ¶ 55, 113 N.M. 547, 828 P.2d 980 (concluding, without explanation, that evidence was sufficient to support district court's conclusion that the defendant was the same person convicted in felonies used for enhancement, despite "discrepancy with respect to social security numbers").

**{34}** When the State submitted a supplemental information seeking to enhance Defendant's sentence, it attached two exhibits—a judgment and sentence for a 2008 drug conviction (the judgment and sentence) and a nunc pro tunc judgment of

conviction from El Paso, Texas (El Paso conviction). The State now points to those exhibits as proof of Defendant's identity for enhancement purposes. The name of the defendant in the judgment and sentence matches Defendant's in the current case, and the judgment and sentence contains a date of birth and social security number that matches Defendant's. The El Paso conviction documents, however, contain no identifying information whatsoever. The defendant's name is listed as "Joseph Antonio Grubb," while the supplemental information in this case identifies Defendant as Joseph A. Grubb. The State proffered no photographs, no testimony, and no fingerprints—although the judgment for the El Paso conviction contained a designated space for fingerprints, which was left blank.

{35}   The facts of this case are similar to *Clements*, where the only evidence to support a prior conviction was a certified copy of the judgment and sentence from a Texas conviction that contained no birth date, no social security number, and stated that the defendant's name was "Jesse Charles Clements," while the defendant's New Mexico convictions referred to "Jesse Clements." 2009-NMCA-085, ¶ 20. The *Clements* court concluded that the trial court unreasonably relied on the judgment and sentence "that simply stated a name similar to [the d]efendant's name and nothing else" and that the state had therefore failed to provide sufficient evidence of the defendant's identity for purposes of enhancing his sentence. *Id.* With regard to the El Paso conviction in this case, the district court similarly had a judgment that referred to a person with a name similar to Defendant's and nothing more. Because "insufficient evidence is never a bar to the retrial of a defendant's status as a habitual offender," we reverse and remand for the district court to resentence Defendant in accordance with this opinion. *Salas*, 2017-NMCA-057, ¶ 52.

{36}   The State suggests that the judgment and sentence, which contains sufficient identifying information and purports to refer to the El Paso conviction, is sufficient evidence of identity to support the enhancement for both the 2008 case represented by the judgment and sentence and the El Paso conviction. The State has not, however, provided any citations to authority suggesting that a district court order, from a case not on appeal, acknowledging a prior conviction can provide sufficient evidence of identity with regard to that prior conviction for purposes of a habitual offender enhancement. We therefore assume no such authority exists, *In re Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329, and conclude that the State proffered insufficient evidence to support a habitual offender enhancement based on the El Paso conviction.

## CONCLUSION

{37}   We remand to the district court for resentencing consistent with this opinion.

{38}   **IT IS SO ORDERED.**

**M. MONICA ZAMORA, Chief Judge**

**WE CONCUR:**

**JULIE J. VARGAS, Judge**

**JACQUELINE R. MEDINA, Judge**