Certiorari Denied, July 19, 2012, No. 33,668

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2012-NMCA-084

Filing Date: May 18, 2012

Docket No. 30,407

STATE OF NEW MEXICO,

 Plaintiff-Appellee,

v.

ALI GODOY,

 Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Kenneth H. Martinez, District Judge**

Gary K. King, Attorney General
Olga Serafimova, Assistant Attorney General
Santa Fe, NM

for Appellee

Jacqueline L. Cooper, Chief Public Defender
Tania Shahani, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**CASTILLO, Chief Judge.**

**{1}** Defendant appeals from his conviction for possession of cocaine. He argues that imprecision in the jury instructions created error, that the evidence was insufficient to convict, and that the due process afforded him at the sentencing hearing was inadequate. We affirm.

**BACKGROUND**

**{2}**     On November 13, 2007, a regional drug task force executed a search warrant at the residence of Defendant.  Officers approached Defendant's car after he pulled into the driveway.  Humberto Martinez arrived soon after in another vehicle and pulled up behind Defendant.  Defendant was ordered to step out of his car, and when he did, officers saw a plastic bag on the front seat that had the appearance of crack cocaine.  Without identifying the substance, Defendant stated that it was for his "personal use."  Officers also searched the vehicle of Martinez, and in the trunk they found a baseball glove wrapped around about fifty-five grams of powder cocaine and a one-pound bag of marijuana.  Martinez stated to officers, "You got me."  At trial, Martinez, who pleaded guilty to trafficking cocaine in exchange for a modified sentence, testified that the cocaine in his trunk belonged to Defendant but that he agreed to transport the drugs to Defendant's house and take the blame if they were caught.  A search of Defendant's house also turned up a scale and a cigarette case with trace amounts of powdery residue in it.

**{3}**     Defendant was charged with trafficking, conspiracy, and possession of drug paraphernalia.  He was not convicted of trafficking or conspiracy, but a jury found him guilty of a stepped-down count of possession of cocaine, as well as possession of drug paraphernalia.  Defendant was sentenced to eighteen months on each conviction, and his sentence for possession of cocaine was enhanced by eight years because he had at least three previous felony convictions within the past ten years.  Defendant filed a timely appeal only on the cocaine possession charge and the enhanced sentence.  We take his arguments in turn.

**DISCUSSION**

**I.     Jury Instructions and Unanimity**

**{4}**     Defendant first contends that the court failed to clarify imprecise jury instructions, thereby neglecting to instruct the jury that any conviction for the stepped-down charge of possession had to be based on the same substance considered by the jury for the trafficking offense.  "The standard of review we apply to jury instructions depends on whether the issue has been preserved.  If the error has been preserved we review the instructions for reversible error.  If not, we review for fundamental error." *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 (citation omitted).  In the case before us, defense counsel did not object to the jury instruction, so we review for fundamental error.  "The doctrine of fundamental error applies only under exceptional circumstances and only to prevent a miscarriage of justice." *State v. Barber*, 2004-NMSC-019, ¶ 8, 135 N.M. 621, 92 P.3d 633. Fundamental error occurs when a court fails to instruct a jury on an essential element. *See State v. Sutphin*, 2007-NMSC-045, ¶ 16, 142 N.M. 191, 164 P.3d 72.  A reviewing court "should exercise this discretion very guardedly, and only where some fundamental right has been invaded, and never in aid of strictly legal, technical, or unsubstantial claims[.]" *State v. Cunningham*, 2000-NMSC-009, ¶ 12, 128 N.M. 711, 998 P.2d 176 (internal quotation marks and citation omitted).  Defendant does not complain that an essential element was

excluded. In reviewing for fundamental error in this case, we must determine "whether a reasonable juror would have been confused or misdirected by the jury instruction." *Id.* ¶ 14 (internal quotation marks and citation omitted).

**{5}** Defendant argues that the two substances at issue—crack cocaine found in his car and powder cocaine found in Martinez's car—created jury confusion and that a conviction on the lesser charge of possession was appropriate only if each juror arrived at that decision after entertaining a reasonable doubt about trafficking of the same substance. In other words, Defendant argues that some jurors could have found that Defendant should be acquitted of trafficking based on the cocaine found in Martinez's trunk but was guilty of a possession charge based on the crack cocaine found in his own car. Defendant cites no authority for the proposition that jury unanimity was required to rely on the same evidence—here, either the crack cocaine in Defendant's car or the powder cocaine in Martinez's car—when evaluating the greater and lesser offenses, and we find no legal authority for that argument. Where a party cites no authority to support an argument, we may assume no such authority exists. *In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984).

**{6}** In fact, New Mexico case law contradicts Defendant's argument and supports the State's contention that, where alternative theories of guilt are put forth under a single charge, jury unanimity is required only as to the verdict, not to any particular theory of guilt. The New Mexico Supreme Court has stated that "a jury's general verdict will not be disturbed in such a case where substantial evidence exists in the record supporting at least one of the theories of the crime presented to the jury." *State v. Salazar*, 1997-NMSC-044, ¶ 32, 123 N.M. 778, 945 P.2d 996. New Mexico's uniform jury instructions "either refer generally to a requirement of jury unanimity or require only that the jury agree on a verdict. No provision explicitly or implicitly requires jury unanimity on an underlying theory[.] *Id.* ¶ 34 (citation omitted). In *Salazar*, the State put forth two theories of first degree murder, and the defendant was convicted under a general jury form that did not indicate which theory the jurors based their decision on. *Id.* ¶ 14. Considering the additional issue of a step-down to a lesser offense, the Court noted: "The jury is not required to agree unanimously on one alternative theory of that lesser offense." *Id.* ¶ 36. The Court concluded: "It would make little sense to insist that somehow depraved mind murder differs significantly in blameworthiness, depravity, or culpability from other theories like deliberate and felony murder with which it is similarly labeled, included, and punished." *Id.* ¶ 42.

**{7}** *Salazar* followed the lead of the United States Supreme Court for the proposition that "common law analyses of due process have not required jury unanimity on a particular theory of the crime charged." *Id.* ¶ 39. The Court in *Salazar* relied on *Schad v. Arizona*, in which the United States Supreme Court stated that "[w]e have never suggested that in returning general verdicts in such cases the jurors should be required to agree upon a single means of commission," because "different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line." 501 U.S. 624, 631-32 (1991) (internal quotation marks and citation omitted). The Court in *Schad* concluded: "Plainly

3

there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict." *Id.* at 632 (internal quotation marks and citation omitted). Justice Scalia, in concurrence, observed that "it has long been the general rule that when a single crime can be committed in various ways, jurors need not agree upon the mode of commission." *Id.* at 649.

**{8}**     In the case before us, similar to the murder charge in *Salazar*, the State brought only one count of trafficking, with only one count of the lesser included offense of possession. Although the State brought two theories of possession—based on the crack cocaine found in Defendant's car or the powder cocaine found in Martinez's vehicle—jury unanimity was required only on the overall verdict, not on either of the State's alternative theories of trafficking or possession. One witness testified that a lab analysis does not distinguish between cocaine in rock form or powder form. Multiple witnesses testified that both forms of cocaine were in quantities large enough to qualify for a count of trafficking, so it is possible that jurors could have derived a step-down verdict of possession from either substance or from both of them.

**{9}**     Defendant also points to *State v. Stefani*, 2006-NMCA-073, 139 N.M. 719, 137 P.3d 659, to argue that the State should have distinguished specific evidence related to a possession charge from evidence that led to a trafficking conviction. But *Stefani* involved two separate charges—trafficking by manufacture and possession of drug paraphernalia—and we were concerned there, on remand, with issues of jury confusion and double jeopardy. *Id.* ¶¶ 30-32. In the case before us, Defendant faced one charge of trafficking and the step-down to possession, with elements that are a subset of the greater charge. And, as stated above, the jury's verdict need not have been parsed between the two forms of cocaine that Defendant had in his car or may have constructively possessed in Martinez's vehicle.

**{10}**     Defendant reaches to a twenty-four-year-old Washington State sexual assault case for the argument that the above cases involving "alternative means" of committing the crime differ from cases involving "multiple acts" that require unanimity specific to the particular act that leads to the conviction. *See State v. Kitchen*, 756 P.2d 105, 109 (Wash. 1988) (en banc) (stating that "the jury must be unanimous as to which act or incident constitutes the crime"). We acknowledged *Kitchen* two years after it was handed down and noted that in some circumstances involving multiple acts, the state must either choose one act as the basis for a possible conviction or the court must instruct the jury that it must agree unanimously on a single act. *State v. Altgilbers*, 109 N.M. 453, 469, 786 P.2d 680, 696 (Ct. App. 1989). However, we noted, defense counsel must request such a jury instruction, and failure to do so is considered harmless error. *Id.* And, even so, there must be (1) evidence to "distinguish[] among the various acts that could have been the basis for conviction on any particular count" and (2) a "rational basis for some jurors to predicate guilt on one act while other jurors predicated guilt on a different act." *Id.*; *People v. Winkle*, 253 Cal. Rptr. 726, 730 (Ct. App. 1988) (stating that two acts involving a minor may be charged under one count and did not require jury unanimity on either particular act because it was "not a case in

4

which different witnesses testified as to one incident but not the other or where different items of real evidence were introduced to prove one act but not the other, so that the jury might have distinguished between the credibility of different witnesses or the weight to be given various items of real evidence." (internal quotation marks and citation omitted)). In the consolidated cases of *Kitchen*, different types of sexual acts with children occurred on separate dates, and witnesses gave conflicting testimony about the various acts. 756 P.2d at 107-08.

**{11}** In the case before us, testimony established that the same substance, albeit in different forms and quantities, was found at the same time in the same vicinity, albeit in separate cars. *See Altgilbers*, 109 N.M. at 471, 786 P.2d at 698 ("We recognize that the unanimity of the jury may be questioned when the evidence at trial in support of one count of the indictment relates to multiple acts at imprecise times."); *cf. State v. Nichols*, 2006-NMCA-017, ¶ 16, 139 N.M. 72, 128 P.3d 500 (concluding that two distinct acts of sexual abuse were "merely two means of satisfying the same element" of the crime charged and not requiring jury unanimity on each act). We conclude that *Salazar* is controlling and that jury unanimity was not required as to the specific substance—the crack form of cocaine versus its powder form. "This Court has no reason to assume that an inconsistent or alleged compromise verdict is not unanimous, and no justification exists for inquiring into the logic behind a jury verdict." *State v. Utter*, 92 N.M. 83, 86, 582 P.2d 1296, 1299 (Ct. App. 1978); *see State v. Dobbs*, 100 N.M. 60, 71, 665 P.2d 1151, 1162 (Ct. App. 1983) ("While it would be advisable *in cases involving multiple alternative elements* . . . to have a cautionary instruction, we decline to speculate about whether the jury reached a non-unanimous verdict. There is no indication that they did." (emphasis added)), *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ___ P.3d ___. Here, the jury was unanimous in its finding of guilt, and it need not have agreed on either of the State's alternative theories of Defendant's possession of cocaine. Under fundamental error review, we conclude that Defendant's conviction does not shock the conscience of the Court or amount to a miscarriage of justice.

## II.    Admission of Crack Cocaine as Evidence

**{12}** Defendant next argues that the State failed to establish a proper foundation in order to admit the crack cocaine into evidence. The State admitted in its opening statement that an oversight in lab testing failed to scientifically establish the substance as crack cocaine. The State now contends that Defendant acquiesced in the admission of crack cocaine into evidence and may not now appeal the issue of its admission into evidence at trial.

**{13}** Defendant admits that this claim was not preserved at trial by raising an objection. We thus review this issue for either plain error or fundamental error. *See State v. Barraza*, 110 N.M. 45, 49, 791 P.2d 799, 803 (Ct. App. 1990). "In either case, we must be convinced that admission of the testimony constituted an injustice that creates grave doubts concerning the validity of the verdict." *Id.* We look at the alleged error "in the context of the testimony as a whole." *Id.*

5

**{14}** Although the State failed to present a laboratory analysis authenticating the substance found in Defendant's car as crack cocaine, it was able to provide other evidence to support a conviction for drug possession, such as lay opinions. *See State v. Rubio*, 110 N.M. 605, 607, 798 P.2d 206, 208 (Ct. App. 1990) (holding that lay testimony identifying marijuana or cocaine is admissible and that the qualifications of the witness go toward the weight of the evidence and not admissibility). Here, when arrested, Defendant raised the inference that the substance was an illegal narcotic by telling officers that he was a user and that the substance was for his personal use. Three police officers testified that the substance was field-tested for the presence of cocaine. One of them, Officer Medrano, testified that the result of the test was positive. Two of the officers also stated that, based on their experience and training, the substance had the appearance of crack cocaine.

**{15}** "In deciding whether the evidence was sufficient to show the substance . . . was cocaine, we may consider such circumstances as the appearance and packaging of the substance, its price, the manner of its use, and its effect on the user." *Id.* at 608, 798 P.2d at 209. "The identity of a controlled substance may further be established by persons having lay experience with the drug through prior use, trading, or law enforcement." *Id.* "When there is sufficient circumstantial evidence of the foregoing kind, it is unnecessary that a user familiar with the drug testify as to having sampled it." *Id.* In *Rubio*, the lay opinion of a cocaine dealer qualified him to testify as to the substance in question. *Id.* In the case before us, two officers testified that the substance looked like crack cocaine. Three officers testified that the crack cocaine was field tested, and one of them testified that the test was positive. The officers' opinions, combined with the actions and statements of Defendant, provide sufficient evidence to support the admissibility of the evidence and to allow the jury to weigh such evidence in deciding on a charge of possession. We cannot say that the failure of the State to provide a laboratory test of the substance places the validity of the verdict in doubt.

### III.    Sufficiency of the Evidence

**{16}** Defendant next claims that, even if it was proper to admit into evidence the substance found in his car, the totality of the evidence presented at trial was insufficient to support a conviction for possession. We use a substantial evidence standard of review when considering challenges based on sufficiency of the evidence. *See State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Salgado*, 1999-NMSC-008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (internal quotation marks and citation omitted). The substantial evidence may be either direct or circumstantial but must support a guilty verdict beyond a reasonable doubt as regards every element of the crime alleged. *Sutphin*, 107 N.M. at 131, 753 P.2d at 1319. "We review the evidence in the light most favorable to the verdict, resolving all conflicts and indulging all reasonable inferences in favor of the verdict." *Stefani*, 2006-NMCA-073, ¶ 33. We then determine "whether the evidence viewed in this manner could justify a finding by any rational trier of fact that each element of the crime charged has been established beyond a reasonable doubt." *State v. Apodaca*, 118 N.M. 762, 766, 887 P.2d 756, 760 (1994) (internal quotation marks and

citation omitted).

**{17}**     Defendant makes two claims regarding the sufficiency of the evidence.  First, he argues that there was insufficient evidence regarding the identity of the substance found in his car.  We have already addressed this claim in the previous section.  Defendant also argues that the evidence was not sufficient to prove that he constructively possessed the cocaine in the trunk of Martinez's vehicle.  Defendant claims that Martinez was an unreliable witness because his plea deal showed a bias and a motivation to lie and, thus, the State's evidence was wanting as to who possessed the cocaine in the Martinez vehicle.

**{18}**     Defendant acknowledges that the credibility of any witness is the purview of the jurors, who are to decide how much weight is to be given to testimony. *See State v. Hughey*, 2007-NMSC-036, ¶ 16, 142 N.M. 83, 163 P.3d 470.  As a reviewing court, "[w]e do not substitute our judgment for that of the factfinder concerning the credibility of witnesses or the weight to be given their testimony." *State v. Haskins*, 2008-NMCA-086, ¶ 8, 144 N.M. 287, 186 P.3d 916.  In such a situation, it is sufficient for the district court to allow a witness who has arranged a lighter sentence in exchange for his testimony to be cross-examined by defense counsel, who has adequate opportunity to challenge the witness's credibility. *See State v. Brown*, 1997-NMSC-029, ¶ 17, 123 N.M. 413, 941 P.2d 494; *State v. Sanders*, 117 N.M. 452, 460, 872 P.2d 870, 878 (1994) (stating that information that the witness would benefit from a plea agreement would be considered by the jury in determining the witness's bias and motive for testifying).  We leave such questions of credibility to the factfinder.  We "presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the [prevailing party], and must defer to that resolution." *State v. Sena*, 2008-NMSC-053, ¶ 11, 144 N.M. 821, 192 P.3d 1198 (alteration in original) (internal quotation marks and citation omitted).  We thus do not consider the weight jurors gave to Martinez's testimony and his credibility as a witness.

**{19}**     Defendant next objects that the State failed to adequately prove that he constructively possessed the powder cocaine in Martinez's car.  The bulk of the evidence linking Defendant to the powder cocaine came from the statements of Martinez, who testified that Defendant asked him to carry the cocaine from one of Defendant's apartments to the other and to say that it was his if "something happened."   Although Defendant glosses over evidence provided through Martinez's statements, such testimony is sufficient to show that Defendant knew it was cocaine or believed it to be cocaine and that he knew where the cocaine was and exercised control over it. *See* UJI 14-3130 NMRA; *State v. Bowers*, 87 N.M. 74, 77, 529 P.2d 300, 303 (Ct. App. 1974).  That testimony could have convinced the jury that the State satisfied the elements of constructive possession.  And even though defense counsel suggested that Martinez was lying during his testimony, the jury need not have accepted defense counsel's assertion. *See State v. Cabezuela*, 2011-NMSC-041, ¶ 45, 150 N.M. 654, 265 P.3d 705 (stating that "contrary evidence offered by [a d]efendant does not warrant a reversal 'because the jury is free to reject [a d]efendant's version of the facts.'" (quoting *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829)).  Finally, as discussed above, the jury could have convicted Defendant of possession without believing that he

constructively possessed the powder cocaine in Martinez's vehicle. We conclude that sufficient evidence existed to support a jury conviction on the count of possession of cocaine.

**IV.   Enhancement of Sentence as Habitual Offender**

**{20}**   Finally, Defendant asserts that the district court failed to provide him with adequate process when the State sought to prove his previous convictions in its bid to have his sentence extended by eight years. He contends that the State failed to make a prima facie showing of his past convictions before the sentencing hearing and that he therefore had no fair opportunity at the hearing to review and rebut the evidence of those past convictions. "Generally, we review a trial court's sentencing determination for abuse of discretion. However, we review de novo any question regarding the legality of the sentence." *State v. King*, 2007-NMCA-130, ¶ 4, 142 N.M. 699, 168 P.3d 1123 (citation omitted).

**{21}**   New Mexico's habitual offenders statute sets out mandatory sentence enhancements for defendants who have prior felony convictions that occurred up to ten years before the underlying conviction. *See* NMSA 1978, § 31-18-17 (2003); *State v. Perry*, 2009-NMCA-052, ¶ 56, 146 N.M. 208, 207 P.3d 1185. A convicted defendant who has three or more previous convictions within the past decade shall be sentenced to an additional eight years under the statute. *See* § 31-18-17(C). Sentence enhancement under the statute requires three elements to be shown: (1) the defendant is the same person, (2) the defendant has been convicted of the prior felonies, and (3) less than ten years has passed since the defendant completed serving the sentence, probation, or parole. *State v. Clements*, 2009-NMCA-085, ¶ 22, 146 N.M. 745, 215 P.3d 54. "The [s]tate has the burden of showing the three elements to make a prima facie case." *Id.* "The burden of proof is by the preponderance of the evidence." *Id.* "[T]he [s]tate must make its prima facie showing, including all of the required elements for a prior felony conviction as defined by the habitual offender statute, and then the burden of proof shifts to the defendant." *State v. Simmons*, 2006-NMSC-044, ¶ 13, 140 N.M. 311, 142 P.3d 899.

**{22}**   If a defendant offers evidence of invalidity of past convictions, the burden shifts back to the State to persuade the factfinder that the convictions or guilty pleas are valid. *See id.* A defendant seeking to attack the validity of any prior convictions must provide written notice to the State of an intention to do so at least ten days before the sentencing hearing. *See* Rule 5-509(A) NMRA; *State v. O'Neil*, 91 N.M. 727, 728-29, 580 P.2d 495, 496-97 (Ct. App. 1978) (stating that "until the defendant raises an issue as to the validity of the prior convictions, 'validity' is not an issue"). If a defendant fails to give such notice, the court may exclude evidence provided by the defendant at the sentencing hearing except for the defendant's own testimony. *See* Rule 5-509(C).

**{23}**   New Mexico courts have "applied unwaveringly" the principle "that essential fairness requires that there be some pleading filed by the state . . . by which a defendant is given notice and opportunity to be heard before an increased penalty can be imposed."

8

*Caristo v. Sullivan*, 112 N.M. 623, 631, 818 P.2d 401, 409 (1991) (internal quotation marks and citations omitted). In the case before us, Defendant contends that such fairness includes a requirement that the State make its prima facie showing *before* the sentencing hearing. Defendant cites no authority for that claim. In fact, we have previously stated that the prima facie showing of past convictions and proof of the three required elements is to be provided by the State at the sentencing hearing. *See State v. Elliott*, 2001-NMCA-108, ¶ 35, 131 N.M. 390, 37 P.3d 107 ("*At sentencing*, the [s]tate bore the burden of making a prima facie case showing prior valid felony convictions, and [the d]efendant then had the right to offer contrary evidence." (emphasis added)).

**{24}**    Here, Defendant was convicted on November 4, 2009. Eight days later, the State filed supplemental information alleging that Defendant was a habitual offender subject to sentence enhancement. The document alleged previous convictions in Florida, Texas, and New Mexico. Four days later, the State served notice of its intent to seek an enhanced sentence and demanded that Defendant give notice of his intention to attack the validity of any prior convictions. Defendant did not respond by filing a notice that he would challenge the validity of the prior convictions.

**{25}**    At a December arraignment on the supplemental information, defense counsel denied the allegations of previous convictions and told the court that there would be "issues at least to paragraph number one and paragraph number four for sure" of the list of alleged convictions. At the sentencing hearing in January 2010, the State presented authenticated copies of seven previous convictions, at least three of which had occurred in the previous ten years, even discounting the two older ones noted at the December hearing. The State thus made its prima facie case at sentencing, as required, and Defendant did not contest those convictions. The district court then proceeded to sentencing, including the enhancement of eight years as mandated by statute. We conclude that the State's pursuit of an enhanced sentence fell within the bounds of state statute and the rules of criminal procedure, providing adequate notice to Defendant of its intent and then proving the existence of previous convictions by a preponderance of the evidence at the sentencing hearing. The extension of Defendant's sentence for possession by eight years was proper.

**CONCLUSION**

**{26}**    For the foregoing reasons, we affirm Defendant's conviction and sentence.

**{27}    IT IS SO ORDERED.**

_____

**CELIA FOY CASTILLO, Chief Judge**

**WE CONCUR:**

_____

9

**CYNTHIA A. FRY, Judge**

_____

**LINDA M. VANZI, Judge**

**Topic Index for _State v. Godoy_, Docket No. 30,407**

**APPEAL AND ERROR**
Substantial or Sufficient Evidence

**CONSTITUTIONAL LAW**
Due Process

**CRIMINAL LAW**
Controlled Substances

**CRIMINAL PROCEDURE**
Due Process
Enhancement of Sentence

**EVIDENCE**
Admissibility of Evidence

**JURY INSTRUCTIONS**
Criminal Jury Instructions
Improper Jury Instructions