This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40822**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**STEVEN R. OSTERHOLT,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Steven Blankinship, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Leland M. Churan, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Steven J. Forsberg, Assistant Appellate Defender
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**BACA, Judge.**

**{1}** Defendant appeals his convictions for aggravated assault by use of a deadly weapon, contrary to NMSA 1978, Section 30-3-2(A) (1963); shooting at or from a motor vehicle, contrary to NMSA 1978, Section 30-3-8(B) (1993); and tampering with evidence, contrary to NMSA 1978, Section 30-22-5 (2003). Defendant advances the following arguments on appeal: (1) his convictions for aggravated assault by use of a

deadly weapon and shooting at or from a motor vehicle constitute double jeopardy; (2) insufficient evidence supports his conviction for tampering with evidence; and (3) one of his prior convictions is not usable to enhance his sentence. We conclude that Defendant's convictions for aggravated assault by use of a deadly weapon and shooting at or from a motor vehicle violate his right to be free from double jeopardy, and therefore, one of the convictions must be vacated. We affirm the remaining convictions.

**BACKGROUND**

**{2}** Because this is an unpublished memorandum opinion written solely for the benefit of the parties, *see State v. Gonzales*, 1990-NMCA-040, ¶ 48, 110 N.M. 218, 794 P.2d 361, and the parties are familiar with the factual and procedural background of this case, we omit a background section and leave the discussion of the facts for our analysis of the issues.

**DISCUSSION**

**I.        Double Jeopardy**

**A.        Standard of Review**

**{3}** Defendant first argues that his convictions for aggravated assault by use of a deadly weapon and shooting at or from a motor vehicle violate his constitutional right to be free from double jeopardy. "[A d]efendant's double jeopardy challenge[] present[s] a constitutional question of law, which we review de novo." *State v. Serrato*, 2021-NMCA-027, ¶ 11, 493 P.3d 383.

**B.        Defendant's Convictions for Aggravated Assault by Use of a Deadly Weapon and Shooting at or From a Motor Vehicle Violate Double Jeopardy**

**{4}** "The double jeopardy clause protects defendants from receiving multiple punishments for the same offense." *State v. Gonzales*, 2019-NMCA-036, ¶ 14, 444 P.3d 1064 (internal quotation marks and citation omitted). Because Defendant "alleges the same conduct resulted in multiple convictions under two different statutes . . . we apply a double-description analysis." *See Serrato*, 2021-NMCA-027, ¶ 11. "First, we analyze the factual question, whether the conduct underlying the offenses is unitary, i.e., whether the same conduct violates both statutes, and if so, we consider the legal question, whether the Legislature intended to create separately punishable offenses." *State v. Ramirez,* 2016-NMCA-072, ¶ 14, 387 P.3d 266 (alterations, internal quotation marks, and citation omitted). "Only if the first part of the test is answered in the affirmative, and the second in the negative, will the double jeopardy clause prohibit multiple punishment in the same trial." *Serrato*, 2021-NMCA-027, ¶ 12. We begin our analysis by determining whether the conduct is unitary.

**1.        Unitary Conduct**

**{5}** When determining whether the conduct underlying the offenses is unitary, we examine "whether the same conduct violates both statutes." *Id.* Therefore, "[t]he unitary conduct analysis turns on whether the acts underlying the two offenses are separated by sufficient indicia of distinctness." *State v. Lorenzo*, 2024-NMSC-003, ¶ 6, 545 P.3d 1156 (internal quotation marks and citation omitted). To determine if the acts are separated by sufficient indicia of distinctness, "we look to the elements of the charged offenses, the facts presented at trial, and the instructions given to the jury." *Id.* (alteration, omission, internal quotation marks, and citation omitted).

**{6}** Moreover, "[t]he proper analytical framework is whether the facts presented at trial establish that the jury reasonably could have inferred independent factual bases for the charged offenses." *Gonzales*, 2019-NMCA-036, ¶ 15 (internal quotation marks and citation omitted). "When examining the factual record, courts consider such factors as whether the acts were close in time and space, their similarity, the sequence in which they occurred, whether other events intervened, and the defendant's goals for and mental state during each act." *Lorenzo*, 2024-NMSC-003, ¶ 6 (alteration, internal quotation marks, and citation omitted). "Unitary conduct is not present when one crime is completed before another is committed, or when the force used to commit a crime is separate from the force used to commit another crime." *State v. Phillips*, 2024-NMSC-009, ¶ 38, 548 P.3d 51 (internal quotation marks and citation omitted). As well, we consider the state's theory of the case as it may be articulated in its closing argument. *See Gonzales*, 2019-NMCA-036, ¶ 20; *State v. Silvas*, 2015-NMSC-006, ¶¶ 10, 19, 343 P.3d 616; *Ramirez*, 2016-NMCA-072, ¶ 17. Finally, "[l]ooking at the totality of the circumstances, if it reasonably can be said that the conduct is unitary, then we must conclude that the conduct was unitary." *Lorenzo*, 2024-NMSC-003, ¶ 6 (internal quotation marks and citation omitted).

**{7}** Considering these factors as applied to this case, we conclude that the conduct was unitary. We explain.

a. **The indictment and jury instructions**

**{8}** Here, as to the charge of aggravated assault by use of a deadly weapon, the "Grand Jury Indictment" alleges:

> Count 2: Aggravated Assault (Deadly Weapon) . . ., on or about May 21, 2021, . . . [D]efendant did assault or strike at [the victim], with a 9 mm semi-automatic handgun, a deadly weapon, a fourth degree felony, contrary to . . . Section 30-3-2(A).

**{9}** As to the charge of shooting at or from a motor vehicle, the indictment alleges:

> Count 3: Shooting At or From a Motor Vehicle (No Great Bodily Harm) . . . , on or about May 21, 2021, . . . [D]efendant did willfully and unlawfully discharge a firearm at/from a motor vehicle with reckless

disregard for the safety of any other person, a fourth degree felony, contrary to . . . Section 30-3-8(B).

**{10}** The allegations for each of these charges does little to help this Court determine whether "the acts underlying the two offenses are separated by sufficient indicia of distinctness." *See Lorenzo*, 2024-NMSC-003, ¶ 6 (internal quotation marks and citation omitted). In other words, apart from the allegations in the indictment that Defendant used a firearm in the commission of each crime, there is a paucity of other factual detail in the indictment that inhibits this Court's determination of whether the acts giving rise to these charges "were close in time and space, their similarity, the sequence in which they occurred, whether other events intervened, and the defendant's goals for and mental state during each act." *State v. Franco*, 2005-NMSC-013, ¶ 7, 137 N.M. 447, 112 P.3d 1104. We therefore cannot rely on the indictment to determine unity of conduct for these charges.

**{11}** Concluding that the indictment does not assist us in determining unity of conduct, we next consider the jury instructions. *See Lorenzo*, 2024-NMSC-003, ¶ 6 ("In determining sufficiency, we look to the elements of the charged offenses . . . and the instructions given to the jury." (alteration, omission, internal quotation marks, and citation omitted)). Here, as to the charge of aggravated assault by use of a deadly weapon, jury instruction number 6 instructs the jury that to find Defendant guilty of that charge, the State must prove each of the following elements beyond a reasonable doubt:

1. [D]efendant shot at [the victim];

2. [D]efendant's conduct caused [the victim] to believe [D]efendant was about to intrude on [the victim's] bodily integrity or personal safety by touching or applying force to [the victim] in a rude, insolent or angry manner;

3. A reasonable person in the same circumstances as [the victim] would have had the same belief;

4. [D]efendant used a handgun;

5. This happened in New Mexico on or about the 21st day of May, 2021.

**{12}** As to the charge of shooting at or from a motor vehicle, jury instruction number 7 instructs the jury that to find Defendant guilty of that charge, the State must prove each of the following elements beyond a reasonable doubt:

1. [D]efendant willfully shot a firearm at or from a motor vehicle with reckless disregard for another person;

2.     This happened in New Mexico on or about the 21st day of May, 2021.

**{13}**     Like the indictment, the jury instructions do not meaningfully assist this Court in determining the presence of unitary conduct as to these charges. Apart from requiring that Defendant shot a firearm in the commission of each crime, the instructions do not provide further detail as to whether the acts giving rise to the charges "were close in time and space, their similarity, the sequence in which they occurred, whether other events intervened, and the defendant's goals for and mental state during each act." *See Franco*, 2005-NMSC-013, ¶ 7. We therefore cannot rely on the instructions to determine unity of conduct for these charges.

**{14}**     Because neither the indictment nor the jury instructions help us resolve whether there was unity of conduct when Defendant committed these offenses, we consider the State's theory of the case as articulated during its opening statement and closing argument. *See Gonzales*, 2019-NMCA-036, ¶ 20 (considering closing argument of the state in determining unitary conduct); *see also Lorenzo*, 2024-NMSC-003, ¶ 11 (considering the state's theory of the case in determining unitary conduct).

**b.     The State's theory of the case**

**{15}**     The State's theory of the case at trial can be inferred from its opening statement and closing argument. As articulated in its opening statement and closing argument, the State's theory of the case relied on Defendant's act of shooting from the vehicle he was driving at the victim in his pursuing vehicle to prove both the aggravated assault by use of a deadly weapon charge and the shooting at or from a motor vehicle charge.

**{16}**     In its opening statement, the State told the jury that during the pursuit, the two vehicles drove on several different streets and "as [the victim] was following and as he was talking to dispatch, . . . Defendant fired gunshots at [the victim] who was behind . . . Defendant. Several gunshots." The State made this point again when it told the jury, "[A]s I said, . . . Defendant was firing the gun . . . back at [the victim] as . . . Defendant was driving."

**{17}**     Moreover, during its closing argument, the State, using the jury instructions listing the elements for each of the charges, told the jury what the State had to prove and directed the jury to the evidence that it argued met the elements for each charge and on which the jury should rely to find Defendant guilty of the charges. As to the charge of aggravated assault by use of a deadly weapon the State told the jury that it "has to prove that . . . Defendant shot *at* [*the victim*], and we saw that he did when he pointed the gun back *at* [*the victim*] and fired it." Similarly, and contrary to the State's argument now on appeal, as to the charge of shooting at or from a motor vehicle the State told the jury that it must "prove that Defendant willfully shot a firearm at or from a motor vehicle. . . . Shooting at or from a motor vehicle, he did both of those didn't he? He shot it from a motor vehicle because he was driving and he shot. He shot it at a motor vehicle because he shot it *at* [*the victim*] who was behind him in a motor vehicle."

**{18}** Yet, despite making these statements to the jury in its closing argument, the State asserts on appeal that the conduct was not unitary because the State "provided the jury with sufficiently distinct factual bases upon which [the jury] could base Defendant's conviction," and that "two separate and distinct shootings . . . support the two separate charges." In support of those assertions, the State endeavors to distinguish one act of shooting where the firearm was pointed *into the air* while Defendant drove on a particular street, from a second act of shooting where the firearm was pointed *at the victim* while Defendant drove on a different street. Now, on appeal, the State contends that the act of shooting the firearm *into the air* was the basis for convicting Defendant of shooting at or from a motor vehicle and that "the aggravated assault charge was clearly Defendant's second act of shooting given that [the State] specifically pointed to Defendant's act of shooting *at* [the victim]." Thus we are confronted by a direct contradiction in the State's theory of the case on appeal and at the trial.

**{19}** To assist us in resolving this contradiction, we consider the approach taken by our Supreme Court in a similar situation in *Lorenzo*. As to this contradiction, the *Lorenzo* court stated,

> [T]he [s]tate's presentation on appeal does not match its presentation at trial. . . . [H]ad the [s]tate opted for a different presentation at trial, it is possible that the jury could have decided that different [instances of shooting] satisfied the elements of each crime. . . . However, . . . the [s]tate's legal theory, as presented in its closing argument, relies on the [act of shooting at the victim] to prove both offenses. The [s]tate may not now argue in [retrospect] about what it could have asked the jury to decide.

2024-NMSC-003, ¶ 11. Consequently, we must rely not on the theory advanced by the State on appeal, but on the theory presented by the State in its closing argument at trial.

**{20}** Additionally, the State, while conceding that it "[made] a statement referencing both shootings in discussing the [shooting at or from a motor vehicle] jury instruction," argues in its answer brief that we should not presume unitary conduct because (1) "the State did not point to the second shooting as its exclusive basis for conviction"; and (2) the State did not exclusively rely for its theory of shooting at or from a motor vehicle on the facts comprising the aggravated assault and it provided a separate factual bases to the jury for the aggravated assault by use of a deadly weapon charge and the shooting at or from a motor vehicle charge. We do not agree.

**{21}** As we indicated above, the State explicitly directed the jury to consider the same conduct of Defendant in support of the convictions for both aggravated assault by use of a deadly weapon and shooting at or from a motor vehicle. *See Gonzales*, 2019-NMCA-036, ¶ 21 (explaining that "[b]ecause the [s]tate explicitly directed the jury to consider the same conduct to support [the d]efendant's convictions for both [charges], we presume unitary conduct"). To fully illustrate and corroborate this point, we refer to our

prior discussion concerning the State's opening statement, and we set out here the entirety of the State's closing argument as it relates to the charges of aggravated assault by use of a deadly weapon and shooting at or from a motor vehicle.

**{22}** The State began its closing argument as to these charges by stating, "And before I sit down, I'm going to briefly go over the jury instructions with you to, so we can discuss how the instructions and the evidence show . . . Defendant is guilty of these charges."

**{23}** As to the charge of aggravated assault by use of a deadly weapon, the State told the jury the following:

> For aggravated assault by use of a deadly weapon, the [S]tate has to prove that . . . Defendant shot at [the victim]. And we saw that he did when he pointed the gun back at [the victim] and fired it.
>
> Number two. . . . Defendant's conduct caused [the victim] to believe . . . Defendant was about to intrude on [the victim]'s bodily integrity or personal safety by touching or applying force to [the victim] in a rude insolent or angry manner. Yes, it's very rude, isn't it, to fire a gun at somebody when they are pursuing you to hold you accountable for a burglary. And yes, [the victim] was afraid he was [going to] get shot. When the shots start coming at him, he ducked down to try to protect himself, but he kept his eyes high enough where he could see . . . [D]efendant and see to drive. But, yes, he testified honestly, he was afraid of getting shot. And any reasonable person would have the same fear, wouldn't they, when somebody is firing a gun at them?
>
> Number four. . . . Defendant used a handgun. Certainly did, didn't he? A green, nine-millimeter handgun. Police apprehended the handgun and took a picture so you could see it.
>
> And this happened in New Mexico on the 21st day of May 2021.
>
> [D]efendant is guilty of that charge.

**{24}** As to the charge of shooting at or from a motor vehicle, the State told the jury the following:

> Next charge is shooting at or from a motor vehicle. [The] State has to prove . . . Defendant willfully shot a firearm at or from a motor vehicle with reckless disregard for another person.
>
> There's no evidence he did it by accident is there? He did it willfully. He wasn't sleepwalking. He didn't shoot the gun by accident. He held it with

his hand and fired, pulled the trigger and fired multiple times, multiple times.

Shooting at or from a motor vehicle. He did both of those, didn't he? He shot it from a motor vehicle because he was driving and he shot. He shot it at a motor vehicle because he shot it at [the victim], who was behind him in a motor vehicle.

And he did it with reckless disregard for another person. Absolutely. [The victim] could have easily been, . . . killed by bullets coming at him from . . . Defendant. [Inaudible] That shows tremendous disregard and recklessness for another person—firing a gun at [the victim] on the street in the city.

**{25}** Consequently, we conclude that both the State's opening statement and closing argument clearly demonstrate that (1) the State unequivocally relied on Defendant's act of shooting a firearm from the motor vehicle he was driving at the motor vehicle being driven by the victim to convince the jury to convict Defendant of both the aggravated assault by use of a deadly weapon charge and the shooting at or from a motor vehicle charge; and (2) the State explicitly directed the jury to consider Defendant's act of shooting a firearm from the motor vehicle he was driving at the motor vehicle being driven by the victim to support Defendant's convictions for both the aggravated assault by use of a deadly weapon charge and the shooting at or from a motor vehicle charge.

**{26}** Accordingly, we conclude that the conduct underlying the convictions for aggravated assault by use of a deadly weapon and shooting at or from a motor vehicle was unitary, and we proceed to determine whether the Legislature intended to create separately punishable offenses.

## 2. Legislative Intent

**{27}** Because we have concluded that there is unitary conduct, we next consider whether the Legislature intended to permit multiple punishments. *See State v. Porter*, 2020-NMSC-020, ¶ 15, 476 P.3d 1201 ("To determine whether [the d]efendant is protected from being punished for both aggravated assault with a deadly weapon and shooting [at or] from a motor vehicle, this Court must determine whether the Legislature intended to permit multiple punishments."). When, as here, the statutes themselves do not expressly provide for multiple punishments, and the statutes are written with alternatives, we begin by applying the modified *Blockburger* test. *See Gonzales*, 2019-NMCA-036, ¶ 22; *see also Porter*, 2020-NMSC-020, ¶¶ 15-16, 21 (stating that "[n]either [the aggravated assault by use of a deadly weapon or shooting at or from a motor vehicle] statute . . . explicitly authorize[] a court to punish a defendant for conduct that also violates another statute for which the defendant is punished" and that "[b]oth statutes . . . create offenses that may be committed by alternative conduct").

**{28}** "Under the modified *Blockburger* analysis, we no longer apply a strict elements test in the abstract; rather, we look to the state's trial theory to identify the specific criminal cause of action for which the defendant was convicted." *Gonzales*, 2019-NMCA-036, ¶ 22 (internal quotation marks and citation omitted). Regarding the crimes of aggravated assault by use of a deadly weapon and shooting at or from a motor vehicle, our Supreme Court has recently held that "[w]hether one offense subsumes the other depends entirely on the [s]tate's theory of the case." *Porter*, 2020-NMSC-020, ¶¶ 21, 43. In examining the State's theory of this case, we consider "such resources as the evidence, the charging documents, and the jury instructions." *Gonzales*, 2019-NMCA-036, ¶ 23.

**{29}** Finding that "the indictment and jury instructions provide no detail about the State's theory of the case, we look to the evidence as discussed by the State in closing arguments." *See id.* ¶ 24. Regarding the evidence as discussed by the State in closing:

> As noted, the State directed the jury during its closing to [the act of shooting *at the victim*] as the basis for both [aggravated assault by use of a deadly weapon and shooting at or from a motor vehicle]. . . . Thus, although [aggravated assault by use of a deadly weapon], when viewed in the abstract, [may] require[] proof of an element that [shooting at or from a motor vehicle] does not . . . as applied in this case, it does not.

*See id.* Thus, we conclude that the Legislature did not intend to permit multiple punishments for these charges.

**{30}** Consequently, we conclude that Defendant's convictions for aggravated assault by use of a deadly weapon and shooting at or from a motor vehicle violate double jeopardy. Both convictions are categorized as fourth degree felonies. "Where, as here, both offenses result in the same degree of felony, the choice of which conviction to vacate lies in the sound discretion of the district court." *Porter*, 2020-NMSC-020, ¶ 42.

## II.     Tampering With Evidence

## A.     Standard of Review

**{31}** Defendant also argues on appeal that insufficient evidence supports his conviction for tampering with evidence. "[T]he test to determine the sufficiency of evidence in New Mexico . . . is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sutphin*, 1988-NMSC-031, ¶ 21, 107 N.M. 126, 753 P.2d 1314. "An appellate court does not evaluate the evidence to determine whether some hypothesis could be designed which is consistent with a finding of innocence." *Id.* We may neither "weigh the evidence" nor "substitute [our] judgment for that of the fact[-]finder so long as there is sufficient evidence to support the verdict." *Id.* Instead, we "must view the evidence in the light most favorable to the state,

resolving all conflicts therein and indulging all permissible inferences therefrom in favor of the verdict." *Id.*

## B. Sufficient Evidence Supports Defendant's Conviction for Tampering With Evidence

**{32}** "Tampering with evidence consists of destroying, changing, hiding, placing or fabricating any physical evidence with intent to prevent the apprehension, prosecution or conviction of any person." Section 30-22-5(A). "[I]n order for [the d]efendant's conviction on tampering with evidence to be upheld, there must be sufficient evidence from which the jury can infer: (1) the specific intent of the [d]efendant to disrupt the police investigation; and (2) that [the d]efendant actively destroyed or hid physical evidence." *State v. Duran*, 2006-NMSC-035, ¶ 14, 140 N.M. 94, 140 P.3d 515 (internal quotation marks omitted). "When there is no other evidence of the specific intent of the defendant to disrupt the police investigation, intent is often inferred from an overt act of the defendant." *Id.*

**{33}** We conclude there is no question that from the evidence of Defendant's conduct—hiding drugs in his rectum after being arrested and while waiting to be booked and removing the drugs to throw into the toilet—the jury could infer that Defendant actively hid and destroyed physical evidence. We further conclude that by these overt acts, the jury could infer the specific intent of Defendant to disrupt the police investigation.

**{34}** Defendant asserts that because his attempt to flush the drugs down the toilet was unsuccessful, his actions did not amount to the "completed" crime of tampering with evidence. Defendant argues he was guilty of, at most, attempted tampering. Contrary to Defendant's argument, our Supreme Court has held:

> [T]he clear language of the statute makes tampering a specific intent crime, independent of any result or attendant circumstance. The crime of tampering with evidence is complete the moment the accused commits the prohibited act with the requisite mental state, regardless of whether any subsequent police investigation does or even could materialize. . . . The tampering statute does not require proof of any result beyond the actus reus–the act of tampering. The [s]tate need not prove, for instance, that the accused actually avoided apprehension, prosecution or conviction.

*State v. Jackson*, 2010-NMSC-032, ¶¶ 9, 11, 148 N.M. 452, 237 P.3d 754, *overruled on other grounds by State v. Radosevich*, 2018-NMSC-028, ¶ 2, 419 P.3d 176. This is true as long as the State "come[s] forward with sufficient evidence from which the jury can infer both an overt act and the accused's subjective, specific intent." *Id.* ¶ 11 (emphasis omitted). Having concluded that the State came forward with such sufficient evidence, we now conclude that Defendant's actions amounted to the completed crime of tampering with evidence.

**{35}** Next, Defendant argues that by removing the drugs from his rectum, he believed he could avoid being charged with attempting to bring contraband into jail. This argument ignores the following language from *Jackson*: "[T]he proper focus should be on the accused's subjective, specific intent to blind or mislead law enforcement, regardless of whether his objective . . . pertains to a separate criminal investigation." *Id.* ¶ 16. Thus, regardless of whether Defendant sought to avoid a conviction for the crimes with which he was charged at the time, or to avoid a new charge, Defendant tampered with evidence because he specifically intended to blind or mislead law enforcement.

**{36}** Finally, we address Defendant's argument that "[t]he mere act of placing illegal drugs out of view [in his rectum] is not tampering." According to Defendant, placing illegal drugs into his rectum and walking around with the drugs in his rectum is akin to using a pocket to carry illegal drugs, and therefore, his actions can only amount to possession of a controlled substance. We disagree.

**{37}** We are not aware of any case law that equates placing contraband into the rectum with placing contraband into a pocket, and Defendant does not provide support for this idea. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 ("We assume where arguments in briefs are unsupported by cited authority, counsel after diligent search, was unable to find any supporting authority."). Moreover, the jury could have reasonably inferred that, by inserting a bag of methamphetamine into his rectum after being arrested and while waiting to be booked, Defendant hid methamphetamine, and not that he simply possessed it. *See Duran*, 2006-NMSC-035, ¶ 14 ("[I]n order for [the d]efendant's conviction on tampering with evidence to be upheld, there must be sufficient evidence from which the jury can infer . . . that [the d]efendant actively . . . hid physical evidence." (internal quotation marks omitted); *Sutphin*, 1988-NMSC-031, ¶ 21 ("This [C]ourt does not weigh the evidence and may not substitute its judgment for that of the fact[-]finder so long as there is sufficient evidence to support the verdict.").

**{38}** We conclude that sufficient evidence supports Defendant's conviction for tampering with evidence.

### III.    Enhancement of Sentence With Prior Conviction

### A.    Standard of Review and Preservation

**{39}** Defendant lastly argues on appeal that one of his prior convictions could not be used for enhancement purposes because that "prior conviction was over ten years prior to the instant one." As "the district court does not have jurisdiction to impose an illegal sentence and the appellate rules allow jurisdictional issues to be raised for the first time on appeal," *State v. Shay*, 2004-NMCA-077, ¶ 6, 136 N.M. 8, 94 P.3d 8, we address Defendant's argument that his prior felony was untimely and therefore unusable under the Habitual Offender Act. "[W]e review de novo any question regarding the legality of [a] sentence." *State v. Godoy*, 2012-NMCA-084, ¶ 20, 284 P.3d 410.

**B.    Substantial Evidence Supports the Use of Defendant's Prior Conviction to Enhance His Sentence**

**{40}**    NMSA 1978, Section 31-18-17(D)(1) (2003) defines a "prior felony conviction" as "a conviction, when less than ten years have passed prior to the instant felony conviction since the person completed serving his sentence or period of probation . . . for the prior felony." "Since the [s]tate has the burden of proof under habitual offender proceedings, we examine the [s]tate's case for the timeliness of the prior felony conviction at issue against [the d]efendant." *State v. Simmons*, 2006-NMSC-044, ¶ 10, 140 N.M. 311, 142 P.3d 899 (citation omitted). "The standard of proof for the [s]tate's evidence is a preponderance of the evidence." *Id.* The evidence is reviewed under a substantial evidence standard and deference is given to the findings of the district court. *Id.*

**{41}**    The "Order of Conditional Discharge" for the prior conviction at issue was entered on June 20, 2011, and the judgment and sentence in this case was entered on September 15, 2022. In the "Order of Conditional Discharge" for the prior conviction, the district court ordered that "Defendant be placed on supervised probation for three (3) years."

**{42}**    Defendant argues that the "Order of Conditional Discharge" is not substantial evidence that he was on probation for three years. It is evidence only that "the State *intended* for him to serve three years of probation." We think that an *order* by the district court that Defendant serve three years of probation is substantial evidence that he in fact served three years of probation. *See Godoy*, 2012-NMCA-084, ¶ 25 (concluding that "[t]he [s]tate . . . made its prima facie case at sentencing" for enhancement purposes by presenting authenticated copies of the defendant's prior convictions). We conclude that the State has made its prima facie showing that less than ten years has passed since Defendant completed serving probation.

**{43}**    Once the State has made its prima facie showing that less than ten years has passed since Defendant completed serving probation, "the burden of proof shifts to the defendant" to offer "evidence of [the] invalidity of past convictions." *Id.* ¶¶ 21-22. Defendant offers no evidentiary proof that the "Order of Conditional Discharge" requiring three years of probation was not valid for purposes of sentence enhancement or that the three years of probation were never served.

**{44}**    We conclude that substantial evidence supports the use of Defendant's prior conviction to enhance his sentence.

**CONCLUSION**

**{45}**    We affirm Defendant's conviction for tampering with evidence and the use of Defendant's prior conviction to enhance his sentence. We conclude that Defendant's convictions for aggravated assault by use of a deadly weapon and shooting at or from a motor vehicle violate Defendant's constitutional right to be free from double jeopardy.

Therefore, we reverse the district court's judgment and sentence and we remand with instructions to vacate one of the two convictions.

**{46}    IT IS SO ORDERED.**

**GERALD E. BACA, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**MEGAN P. DUFFY, Judge**